Frank Lee RUDOLPH, Petitioner,

v.

William C. HOLMAN, Warden, Kilby Prison, Montgomery, Alabama, Respondent.

Civ. A. No. 2080-N.

United States District Court
M. D. Alabama, N. D.

Dec. 2, 1964.

Fred Blanton, Birmingham, Ala., for petitioner.

Richmond M. Flowers, Atty. Gen., of Alabama, and Leslie Hall, Asst. Atty. Gen., Montgomery, Ala., for respondent.

JOHNSON, District Judge.

The petitioner, Frank Lee Rudolph, by leave of this Court, filed with this Court on June 2, 1964, his application for a writ of habeas corpus. Petitioner was and is presently being held in custody by William C. Holman, Warden, Kilby Prison, State of Alabama, Montgomery, Alabama, under a judgment made and entered by the Tenth Judicial Circuit of Alabama on November 2, 1961. This judgment was entered upon a conviction by a jury for the offense of rape,[1] and Rudolph's punishment was fixed by the jury as death. Pursuant to the judgment, Rudolph was delivered to the Warden of Kilby Prison, Montgomery, Alabama, to suffer death by electrocution. Upon the filing of the petition, this Court ordered the Warden to show cause why the writ

of habeas corpus should not be issued. Pursuant to this order and on June 24, 1964, the Attorney General for the State of Alabama, representing the respondent Warden in this case, filed his return and answer to this Court's order to show cause. The scheduled execution of the petitioner Rudolph for July 10, 1964 (the same having been previously delayed several times by reason of Rudolph's appealing his conviction and sentence to the State courts) was stayed by order of this Court made and entered in this cause on July 1, 1964. The basis of this Court's order staying this execution was that this Court had not had an opportunity to inquire into and to rule upon the merits of Rudolph's contentions in this habeas corpus proceeding.

Upon the pretrial hearing, conducted in this case on August 18, 1964, it was stipulated and agreed by and between the parties that this cause be submitted for decision, without any additional testimony or further evidence by either party, upon the pleadings and exhibits thereto, the stipulations of the parties as hereinafter set out, and upon the certified copy of the transcript of the proceedings in the Circuit Court, Tenth Judicial Circuit of Alabama. As reflected by the pretrial order of this Court, this submission is upon the following issues:

(1) Is the imposition of the death penalty on a rapist who has neither taken nor endangered life, "unnecessary cruelty" within the meaning of the Eighth Amendment to the Constitution of the United States?

(2) Did the exclusion of the public by the trial judge for the Tenth Judicial Circuit of Alabama, in which trial petitioner Rudolph was convicted of rape and sentenced to death, constitute a denial of a "public trial" as guaranteed by the Sixth Amendment to the Constitution of the United States?

(3) Was the admission of an alleged confession by the trial court for the

---

1. Title 14, § 395, Code of Alabama, Recompiled 1958, states the punishment for the offense of rape as follows: "Any person who is guilty of the crime of rape shall, on conviction, be punished, at the discretion of the jury, by death or imprisonment in the penitentiary for not less than ten years."

**64**

Tenth Judicial Circuit of Alabama a denial of "due process" within the meaning of the Fourteenth Amendment? Included in this issue is the contention that the failure and refusal of the trial judge to afford Rudolph and his counsel an opportunity, out of the presence of the jury, to inquire into and offer evidence on the question of the "admissibility" of the alleged confession—which the defendant contended, if made, was involuntary—was a violation of "due process" within the meaning of the Fourteenth Amendment to the Constitution of the United States?

(4) Was the imposition of the death penalty on Rudolph—a Negro convicted rapist—a denial of equal protection within the meaning of the Fourteenth Amendment to the Constitution of the United States?

(5) Did the receiving of Rudolph's alleged confession in evidence by the trial court of the Tenth Judicial Circuit of Alabama, obtained when Rudolph was without counsel, constitute a denial of assistance of counsel as guaranteed by the Sixth Amendment to the Constitution of the United States? In this connection, it is stipulated and agreed by and between the parties that when the confession that was introduced and admitted into evidence by the trial court for the Tenth Judicial Circuit of Alabama was obtained, Rudolph was not represented by counsel.

Prior to inquiring into any of the issues upon this submission, this Court has determined that the petitioner, Frank Lee Rudolph, has exhausted the remedies available to him in the courts of the State of Alabama as required by Title 28, §

2254, United States Code, and is entitled to have this Court rule upon the merits of his case.[2]

For the reasons herein appearing, this Court has concluded that the only issue it is necessary and appropriate to discuss in disposing of this case is issue No. 3, that issue relating to the contention on the part of Rudolph that the failure and refusal of the trial judge to afford him and his counsel an opportunity out of the presence of the jury to inquire into and to offer evidence on the question of the "admissibility" of the alleged confession— which the defendant contended, if made, was involuntary—was a violation of "due process" within the meaning of the Fourteenth Amendment to the Constitution of the United States.

The prosecutrix in this case was a young white woman. At the time of his arrest and conviction, the petitioner Rudolph was a 20-year-old Negro man. The transcript of the trial reflects that on August 1, 1961, and sometime during the early morning hours of that date, the prosecutrix who was sleeping in her apartment in Birmingham, Alabama, awakened to find someone standing over her. The prosecutrix testified that she was sexually assaulted twice, with the only physical violence occurring when the prosecutrix ran into the kitchen after the completion of the second sexual act and tried to unlock the door, at which time she was shoved against the wall by the man assaulting her. The prosecutrix testified that several times during the occasion in question the accused repeated, "You can look at me, but you won't live to tell it." The accused was arrested the same night by the Birmingham police officers and these officers testified as to a

2. Rudolph's conviction and sentence was affirmed by the Supreme Court of Alabama on January 17, 1963. Rudolph v. State, 275 Ala. 115, 152 So.2d 662. A petition for a writ of certiorari was denied on October 21, 1963, by the Supreme Court of the United States with Mr. Justices Goldberg, Douglas and Brennan dissenting. Rudolph v. Alabama, 375 U.S. 889, 84 S.Ct. 155, 11 L.Ed.2d 119. A petition for leave to file an application

for a writ of error coram nobis was made to the Supreme Court of Alabama on March 12, 1964; this petition was denied on March 26, 1964. Ex parte Rudolph, 276 Ala. 392, 162 So.2d 486. A petition for a writ of certiorari to review this denial was filed in the Supreme Court of the United States on April 20, 1964; this petition was denied on April 27, 1964, 377 U.S. 919, 84 S.Ct. 1185, 12 L.Ed.2d 188.

confession made by Rudolph at approximately 2:50 p. m. on August 1, 1961, in the homicide room of the City Hall, Birmingham, Alabama. During the trial of this case and when the prosecution was laying the predicate for the purpose of attempting to have the confession introduced into the evidence and in the presence of the jury, counsel for Rudolph stated to the Court as follows:

"MR. MONTGOMERY: Judge, I would like to introduce in evidence as to what was done prior to the time of this statement, and what the occasion was of these statements later in the afternoon, following that. There were certainly no threats by Mr. Pierce.

"THE COURT: Gentlemen, we will take a recess right now, and you can go back into the juryroom there.

"(Thereupon, the jury left the courtroom at 3:05 p. m., and, out of the presence and hearing of the jury, in open court, the following proceedings were had and done:)

\*    \*    \*    \*    \*    \*

"THE COURT: Who will you have first, Mr. Montgomery?

"MR. MONTGOMERY: Let me have Sgt. Tate.

"SGT. L. A. TATE, recalled as a witness, was examined and testified further as follows:"

After Sgt. Tate had responded to several questions propounded him by Rudolph's counsel, the following proceedings occurred:

"THE COURT: Just a minute, Morel.

"(Thereupon the Court left the courtroom, went into his chambers, and, upon his return, the following proceedings were had and done:)

"THE COURT: Just a minute.

"(Thereupon, the Court observed some written instruments, following which the following proceedings were had and done:)

"THE COURT: Gentlemen, I think I am incorrect in going into this matter in the absence of the jury. Let's wait a few minutes and I will bring them back and you may start back over, with everything you have offered, with this witness in the presence of the jury. If I determine a confession is voluntarily made and admissible, they can't turn it down because they think it is involuntarily, but they are to consider all the surrounding circumstances under which it was made and determine the truth, and they can't do that if they are not here to hear this testimony.

"We will just wait and put them back in the box.

"MR. MONTGOMERY: I know the Court must pass on the admissibility of the confession.

"THE COURT: I have looked into this. I have to tell them that they should keep in mind all these circumstances under which it was made and determine what weight and what credibility to place in it, even though they can't disregard it because they think, in their minds, that it is involuntary.

"We will just rest a few minutes.

"MR. MONTGOMERY: Judge, let me have an exception in the record, and I won't proceed with the matter any further in the presence of the jury.

"THE COURT: All right. You mean you don't want to question further?

"MR. MONTGOMERY: Not at the present moment. It might be necessary later, on further examination, but not at this stage.

"(Thereupon the jury was brought out into the courtroom at 3:23 p. m., and, in the presence and hearing of the jury, in open court, the following proceedings were had and done:)

"THE COURT: At this time, Mr. Montgomery, it is my ruling that you would, at this time, be permitted

to go into the circumstances surrounding the taking of the statement that has been discussed here, and, if you want to, to offer evidence on that question—do you desire to do that at this time?

"MR. MONTGOMERY: No, sir, Judge, we will proceed with his statement."

After the above colloquy had occurred, the testimony was resumed in the presence of the jury, with the statement being read into evidence, without Rudolph and his counsel being afforded any opportunity—out of the presence of the jury—to inquire into and offer evidence on the question of the admissibility of this statement, which statement the defendant contended throughout the trial of the case was made after he had been put into the back seat of a patrol wagon with a police dog and threatened by the police officers that the dog would be permitted to assault him, and after, according to Rudolph's testimony, he had been handcuffed with his hands behind his back and beaten with a stick by one or more of the police officers in the detective room of the Birmingham Police Department. The officers denied any such mistreatment.

When this question concerning the right of the defendant to have the jury excluded so that he would be afforded an opportunity to inquire into the admissibility of the confession that was sought to be introduced against him was raised upon the appeal of this case, the Supreme Court of Alabama in Rudolph v. State of Alabama, supra, stated:

"It was not reversible error to refuse to excuse the jury while the predicate was being laid for the introduction of the alleged confession. We think the court could have excused the jury, as was done in Myhand v. State, supra, but he was not compelled to do so."

Prior to this, the Alabama courts had generally followed the Wigmore or "Orthodox" rule for the determination of the admissibility of confessions. Under this rule the judge hears all the evidence—preferably outside the presence of the jury—and then rules on the admissibility; if after hearing this evidence he determines that the prosecution has made a prima facie showing that the confession was in fact voluntarily made, he admits it, together with all surrounding circumstances, for the jury's consideration as to voluntariness and weight. The theory underlying this rule is that extrajudicial confessions are prima facie involuntary and inadmissible. The duty rests *in the first instance* on the trial court to determine whether or not the evidence should be presented to the jury. Applying this rule, the Supreme Court of Alabama in Myhand v. State, 259 Ala. 415, 66 So.2d 544, observed:

Extrajudicial confessions are prima facie involuntary and inadmissible and the duty rests *in the first instance* on the trial court to determine whether or not a confession is voluntary and unless it so appears, it should not be admitted. (Emphasis supplied.) * * *

"Before the trial court would permit the introduction in evidence of the statements in the nature of a confession alleged to have been made by appellant, the State was required to account for the treatment accorded appellant from the time he was first taken into custody. Before the court admitted the confessions, the witnesses for the State, testifying in regard thereto, were examined *out of the presence of the jury*, both on direct and cross. Likewise, the defendant was placed on the stand by his counsel and permitted to give his version of what transpired. The court having determined from such examination that the confessions should be admitted in evidence, the jury was recalled and the witnesses examined before the jury." (Emphasis supplied.)

In Johnson v. State, 242 Ala. 278, 5 So. 2d 632, the Supreme Court of Alabama, in ruling on this point, stated:

"The rule in this State as to the admissibility of evidence as to con-

fession is well understood. Prima facie, confessions are involuntary, and *there must be evidence addressed to the trial judge* rebutting that presumption, and showing prima facie that the confession was voluntarily made, unless of course the circumstances attending the confession discloses their voluntary character. * * *

"And *after the confessions have been admitted,* the jury may consider the circumstances under which the confessions were obtained, and the appliances by which they were elicited, including the situation and mutual relation of the parties, in exercising their exclusive prerogative of determining the credibility of the evidence, or the weight to which it is properly entitled in controlling the formation of the verdict." (Emphasis supplied.)

Again, in Phillips v. State, 248 Ala. 510, 28 So.2d 542, the Supreme Court of Alabama stated:

"The rule in this State as to the admissibility of confessions in evidence has been stated many times by this court and is well understood. Prima facie, a confession is not voluntary, and there must be evidence addressed to the trial judge rebutting that presumption and showing prima facie that the confession was voluntarily made, unless, of course, the circumstances attending the confession affirmatively disclose its character. * * *

"*Before the trial court would permit the introduction in evidence of any statement* in the nature of a confession alleged to have been made by appellant, the State was required to account for the treatment accorded appellant from the time he was first in custody." (Emphasis supplied.)

The argument that "after the proper predicate is laid" it is within the discretion of the trial judge to determine whether or not the jury should be excluded (Hines v. State, 260 Ala. 668, 72 So.2d 296) begs the question in this case.

It was in connection with "laying the predicate" as to admissibility that Rudolph's attorney requested permission to go into the facts—outside the presence of the jury.

A case almost exactly like the one now before this Court, from a procedural standpoint, is Schaffer v. United States, 5 Cir., 221 F.2d 17, 54 A.L.R.2d 820. In the Schaffer case the defendant upon appeal insisted that the trial court erred in admitting his confession in evidence without hearing conflicting testimony before determining its admissibility. The trial court there stated:

"The Court rules that the statement was voluntarily given and it is a matter of law. We will submit the question of fact to the jury. As a matter of law I think it has been shown that it was given voluntarily."

After that statement by the trial court, the defendant's counsel specifically requested permission to go further into the question of voluntariness outside the presence of the jury. The court refused that request as the trial court did in Rudolph's trial. Upon the appeal of this case, Judge Rives, speaking for the United States Court of Appeals for the Fifth Circuit, stated:

"The facts and circumstances surrounding the giving of a confession affect both its admissibility and its credibility. That situation has led some courts to adopt the rule apparently followed by the district judge in this case, that the prosecution need only make a prima facie showing that the confession was voluntary before it is admitted in evidence, and that thereafter the issue of voluntariness should ultimately be decided by the jury. See Stein v. New York, 346 U.S. 156, 192, 73 S.Ct. 1077, 97 L.Ed. 1522; Annotations 85 A.L.R. 870; 170 A.L.R. 567; Meltzer, Involuntary Confessions: The Allocation of Responsibility Between Judge and Jury, The University of Chicago Law Review, Vol. 21, p. 317. The better view, we think, and that prevailing in the federal

courts, is that the responsibility for admitting a confession in evidence rests solely on the court, and that the court must determine for itself after a full hearing of all of the evidence offered on the issue, whether or not the confession is voluntary and admissible.

"In trials in the federal courts, it has now been settled by decision of the Supreme Court that the trial judge commits reversible error when he refuses to permit the defendant to testify in the absence of the jury to facts believed to indicate the involuntary character of his confession. United States v. Carignan, 342 U.S. 36, 38, 72 S.Ct. 97, 96 L.Ed. 48; cf. Leyra v. Denno, 347 U.S. 556, 74 S. Ct. 716, 98 L.Ed. 948."

A few of the many other federal cases holding that the trial judge must first make a determination of the voluntariness of the confession, at least to the extent that it is admissible, outside the presence of the jury are Crosby v. United States, 114 U.S.App.D.C. 233, 314 F.2d 238; Bray v. United States, 113 U.S.App. D.C. 136, 306 F.2d 743; McHenry v. United States, 10 Cir., 308 F.2d 700; Everitt v. United States, 5 Cir., 281 F.2d 429; Brown v. United States, 5 Cir., 228 F.2d 286; and Patterson v. United States, 5 Cir., 183 F.2d 687.

The Supreme Court of the United States had not dealt with this question until Jackson v. Denno, Warden (1964), 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908. In this case the Supreme Court, in concluding that a state procedure that leaves solely to the trial jury factual determination of voluntariness of the confession violates the Fourteenth Amendment to the Constitution of the United States, stated:

"It is now axiomatic that a defendant in a criminal case is deprived of due process of law if his conviction is founded, in whole or in part, upon an involuntary confession, without regard for the truth or falsity of the confession, Rogers v. Richmond, 365 U.S. 534 [81 S.Ct. 735, 5 L.Ed.2d 760], and even though there is ample

evidence aside from the confession to support the conviction. Malinski v. New York, 324 U.S. 401 [65 S.Ct. 781, 89 L.Ed. 1029]; Stroble v. California, 343 U.S. 181 [72 S.Ct. 599, 96 L.Ed. 872]; Payne v. Arkansas, 356 U.S. 560 [78 S.Ct. 844, 2 L.Ed.2d 975]. Equally clear is the defendant's constitutional right at some stage in the proceedings to object to the use of the confession and to have a fair hearing and a reliable determination on the issue of voluntariness, a determination uninfluenced by the truth or falsity of the confession."

The Court, by way of a footnote, pointed out the bad effect of determining, or attempting to determine, admissibility in the presence of the jury. In this connection the Court stated:

"Although not the case here, an accused may well be deterred from testifying on the voluntariness issue when the jury is present because of his vulnerability to impeachment by proof of prior convictions and broad cross-examination, both of whose prejudicial effects are familiar. The fear of such impeachment and extensive cross-examination in the presence of the jury that is to pass on guilt or innocence as well as voluntariness may induce a defendant to remain silent, although he is perhaps the only source of testimony on the facts underlying the claim of coercion. Where this occurs the determination of voluntariness is made upon less than all of the relevant evidence. Cf. Carignan v. United States, 342 U.S. 36 [72 S.Ct. 97, 96 L.Ed. 48]."

The procedure followed by the trial court for the Tenth Judicial Circuit of Alabama after overruling the request of Rudolph's counsel that he be given an opportunity to go into the question of admissibility outside the presence of the jury under all the circumstances as reflected by the evidence in the case was a clear violation of due process under the Fourteenth Amendment to the Constitution of the United States.

In accordance with the foregoing and for good cause, it is the order, judgment and decree of this Court that the verdict of guilty rendered on November 1, 1961, and the judgment of conviction and the sentence pronounced thereon in the Circuit Court of the Tenth Judicial Circuit of Alabama on the 2nd day of November, 1961, in State Court Case No. 4625, styled The State v. Frank Lee Rudolph, alias Frank Rudolph, be and each is hereby declared void and invalid as being in violation of Frank Lee Rudolph's constitutional rights as guaranteed by the Constitution of the United States. It is further ordered that said verdict of guilty, judgment of conviction and sentence pronounced thereon be and the same are hereby set aside.

It is the further order, judgment and decree of this Court that Frank Lee Rudolph, the petitioner in this case, be discharged from the custody of the State of Alabama and from the custody of William C. Holman, Warden, Kilby Prison, Montgomery, Alabama, to the extent that such custody is or may be pursuant to the conviction and judgment of the Circuit Court of the Tenth Judicial Circuit of Alabama pronounced in State Court Case No. 4625, entitled The State v. Frank Lee Rudolph, alias Frank Rudolph. In this connection, it is appropriate to observe that the crime committed, for which Rudolph was convicted, is a serious one. The order of this Court now being made in this case, whereby Rudolph is to be discharged from custody based upon said unconstitutional conviction, does not mean that if the State authorities elect to do so Rudolph may not be reprosecuted and appropriately punished if he is convicted in a proceeding that comports with due process.

It is ordered that Frank Lee Rudolph's discharge from said custody be not later than 10 a. m., December 15, 1964.

It is further ordered that the costs incurred herein be and they are hereby taxed against the respondent, William C. Holman, Warden, for which execution may issue.