262 So.2d 615

**Robert MOON**

**v.**

**STATE.**

**6 Div. 202.**

Court of Criminal Appeals of Alabama.

May 16, 1972.

128

Tarter & Wininger and James S. Witcher, Jr., Birmingham, for appellant.

William J. Baxley, Atty. Gen., and Herbert H. Henry, Asst. Atty. Gen., for the State.

PER CURIAM.

The indictment charged the appellant with unlawfully possessing heroin. Counsel was appointed by the trial court to represent appellant in the trial court and on this appeal. The appellant entered a plea of not guilty and the trial resulted in a verdict and judgment of conviction. Hence, this appeal.

J. W. Roberson, a policeman for the City of Birmingham, testified in substance that on November 22, 1969, at about 1:30 A.M., he was on duty in an unmarked vehicle; that he saw the appellant in the 1500 block of 5th Alley, North, in Birmingham, Jefferson County, Alabama; that when he first saw him he was coming out of the parking lot of the A. G. Gaston Motel and crossing the alley about fifteen feet in front of the witness's car; that appellant was staggering as he was crossing the alley; that he stopped and got out of his car and approached the appellant and as he got close to him he noticed the strong odor of alcohol and asked him if he had had anything to drink and he said he had had some beer, whiskey, and wine; that appellant was swaying as he stood there; that his speech was slurred; that at that point he arrested him for drunkenness; that he then searched the appellant and took from inside the lining of his jacket a plastic bottle containing six capsules which contained a white powder having the appearance of heroin; and that after he found the bottle containing the capsules he also arrested appellant for violation of the State narcotics law and turned the bottle and capsules over to Lt. Harry Hayes with the Birmingham Police Department, Narcotics Division.

Lt. Hayes testified in substance that he carried the bottle and capsules to State Toxicologist Robert B. Johnson and remained there until tests were run on the contents and that he then, on the same day, November 24, 1969, saw the appellant in the conference room of the jail; that he first warned the appellant of his rights; and he then stated the warnings he gave appellant in these words:

"When he sat down I advised him of his rights, told him he had a right to

remain silent; anything he said could be and would be used against him in a court of the law; he had a right to have an attorney present before any questions being asked; if he could not afford an attorney, one would be appointed for him before any questions would be asked; and asked him did he fully understand that, and he said yes, sir."

On voir dire examination of this witness outside the presence of the jury we quote from the record the following:

"MR. WITCHER: When you advised him of these things, what was his state or condition? Were you able to observe how he was acting, and what he was doing?

"A. Yes, sir.

"MR. WITCHER: Would you tell us what it was?

"A. He was having withdrawal symptoms.

"MR. BOWEN: We would object to that answer, may it please the Court, as being a mental operation and conclusion on the part of the witness.

"THE COURT: Sustained.

"MR. BOWEN: And ask that it be struck from the record.

"THE COURT: Strike the last answer from the record. You may lay your proper predicate, Mr. Witcher.

"MR. WITCHER: All right, sir. Was he going through any physical motion or movement when you saw him?

"A. Yes, sir, he was.

"MR. WITCHER: Would you describe those to me?

"A. Sir?

"MR. WITCHER: Would you describe those to me?

"A. When he sat down in a chair at the table, he sat down in this type manner, here, clutching his stomach, which

is a typical symptom. Also, he was having chills.

"MR. WITCHER: By having chills, what was he doing?

"A. Shaking and sniffing. In other words, similar to a person that has got a cold, he will sniff like that.

"MR. WITCHER: After you advised him of the advice you gave him, had he manifested to you, or did he manifest to you he understood it?

"A. He stated he understood it.

"MR. WITCHER: Was he shivering, shaking, quivering and quaking at the time he said that?

"A. I don't remember in all. Probably he was.

"MR. WITCHER: Was he sniffing and clutching his stomach throughout the whole time you talked to him?

"A. He was not sniffing most of the time, but he was constantly kind of shifting and moving. It is a constant type pain.

"MR. WITCHER: Have you had occasion to interview more or interrogate— have you interrogated several people under what appeared to be the same conditions you observed at that time?

"A. I have interviewed quite a few people.

"MR. WITCHER: Well, those people you interviewed, were they undergoing similar activity as this man was?

"A. Most of them was, yes, sir.

"MR. WITCHER: To your knowledge, was he ever examined by a doctor or anybody like that over there?

"A. No, sir, I couldn't really say. Most of them, they are checked, and a nurse there will try to give asperin and a few other things, but I don't know whether it was wrote up, or anything, or not."

Also on voir dire outside the presence of the jury the record discloses the following:

"MR. WITCHER: Judge, I have no further questions of Officer Hayes— I would like, if I could, to put the defendant on the stand for a limited purpose of testifying as to these events that took place at this time.

"MR. BOWEN: Judge, we see no need of putting the defendant on if the Court rules that anything Lt. Hayes asked this defendant and anything this defendant answered him on that occasion is properly to be admitted into evidence, then putting the defendant on to deny it or anything else would have no bearing.

"MR. WITCHER: For the limited purpose of testifying what took place at that time.

"MR. BOWEN: I see no need to try to impeach a witness outside the presence of the jury.

"THE COURT: The Court fails to see it, too. Request denied.

"MR. WITCHER: We accept."

The jury was recalled and the record discloses the following:

"Q. (BY MR. BOWEN) All right, Lt. Hayes, while you were over there in the City Jail on this occasion you have previously testified about, what, if anything, did you say to this defendant and what did this defendant say to you?

"A. I asked him where did he get the heroin that he had. He said that he didn't want to talk about it, said that it wasn't his; and I asked him if he was an addict. He stated that he was presently shooting around eight bags a day.

"Q. He told you he was shooting eight bags a day?

"A. Yes, sir.

"Q. Would you explain to the ladies and gentlemen of the jury what a bag is?

"A. That is a small one by one cellophane envelope that contains heroin for the amount of one shot.

"Q. Would there be, in your judgment, enough heroin in these capsules to constitute a bag?

"A. Yes, sir, there would be approximately one bag.

"Q. Did he say anything else to you?

"A. That he was sick.

"Q. What was he doing, or what was his physical appearance there on the occasion you talked to him?

"A. He was having typical withdrawal symptoms.

"MR. WITCHER: We are going to object to that.

"MR. BOWEN: Don't give any conclusions.

"THE COURT: Sustain the objection. Disregard the last answer, ladies and gentlemen.

"Q. Just tell what he was doing.

"A. He was having chills, clutching his stomach with his hands like this, and constantly moving. He was sniffing like he had a—like a cold.

"Q. Could you understand him—when he spoke to you, could you understand what he was saying?

"A. Yes, sir.

"Q. And did he speak in a normal tone of voice?

"A. Not—not normal, like he would be now.

"Q. What would you say his tone of voice was when you spoke to him?

"A. I would say it was sort of on the whispering type."

On July 17, 1970, the appellant filed a motion to suppress the evidence, to-wit,

heroin which was seized from his person as a result of the search of his person at the time of his arrest. That motion was overruled on July 27, 1970. The order of the trial court overruling said motion recites that it was heard and considered but the record does not disclose any evidence taken on said hearing. That motion was orally renewed during the testimony of J. W. Roberson. On voir dire examination of Roberson outside the presence of the jury the evidence surrounding the seizure as set out above developed. The motion was again overruled. The evidence was also objected to at that time.

During the testimony of Lt. Hayes and at the point when he was asked what was said by him and what was said by appellant after appellant was warned of his rights, the appellant objected. He then took the witness on voir dire examination outside the presence of the jury and developed the facts surrounding the interview as set out above with the exception that it was not shown on voir dire that the appellant stated at the time of the questioning that "he did not want to talk about it." That particular statement came after the jury returned and in answer to a question propounded by the assistant district attorney but the objection was still before the court and not ruled on.

State Toxicologist Johnson testified that he made tests on the contents of the capsules in question which showed the presence of 6.7 per cent heroin.

The appellant offered evidence in an effort to show he found the bottle containing the capsules in question and placed it in his pocket and did not know what the capsules contained. He also testified that he did not talk with Lt. Hayes on the occasion testified to by Hayes. He denied telling Hayes any of the things Hayes said the appellant had told him.

The appellant complains that the testimony of the policeman who arrested him relating to the heroin he found and seized in his search of the person of the appellant at the time of appellant's arrest was not admissible.

The legality of the arrest of the appellant is basic in answering this complaint of the appellant. In that connection we here set out certain sections of Tit. 15, Code of Alabama, 1940, recompiled 1958:

"§ 152. An arrest may be made, under a warrant, or without a warrant, by any sheriff, or other officer acting as sheriff, or his deputy, or by any constable, acting within their respective counties, or by any marshal, deputy marshal, or policeman of any incorporated city or town, within the limits of the county."

"§ 154. An officer may also arrest any person, without warrant, on any day and at any time, for any public offense committed, or a breach of the peace threatened in his presence; or when a felony has been committed, though not in his presence, by the person arrested, or when a felony has been committed, and he has reasonable cause to believe that the person arrested committed it; or when he has reasonable cause to believe that the person arrested has committed a felony, although it may afterwards appear that a felony had not in fact been committed; or on a charge made, upon reasonable cause, that the person arrested has committed a felony."

While it does not specifically appear from the record whether the policeman arrested the appellant for the violation of the State law relating to public drunkenness or Ordinance of the City of Birmingham relating to the same offense, the courts of this State are required to take judicial notice of both. See Tit. 7, § 429 (1), Code, supra. It is a fact that the arresting officer was a policeman of the City of Birmingham and on duty as such and therefore specifically charged with the duties of enforcing the ordinances of that City. The evidence in this case further shows that appellant was first placed in the city jail. The circumstances are

such as to show sufficient proof that appellant was arrested for a violation of a city ordinance and not the State law relating to public drunkenness.

The ordinance of the City of Birmingham in that respect is as follows:

"No person shall, while intoxicated or drunk, appear in any public place, or at or within the curtilage of any private residence not his own, where one or more persons are present, and manifest a drunken condition by boisterous, noisy, disorderly or indecent conduct, or by rude and profane language or by staggering, falling or sleeping. (Code 1944, § 835; Ord. No. 65–6.)" Sec. 36–15, General Code of the City of Birmingham, Alabama, 1964.

■ The arresting policeman testified the appellant was staggering and there was a strong odor of alcohol about him, and that his speech was slurred and he swayed when standing. There was sufficient evidence of drunkenness and a sufficient manifestation thereof at the time in question and all this in the presence of the arresting officer, unaided by any statement on the part of the appellant, to justify legally the arrest of the appellant for a violation of the city ordinance. Under such facts a warrant of arrest was not necessary.

■ The arrest being legal it follows that the search of appellant's person was legal. In the case of Loyd v. State, 279 Ala. 447, 186 So.2d 731, the court said in quoting Preston v. United States, 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777:

" '. . . Unquestionably, when a person is lawfully arrested, the police have the right, without a search warrant, to make a contemporaneous search of the person of the accused for weapons or for the fruits of or implements used to commit the crime. Weeks v. United States, 232 U.S. 383, 392, [34 S.Ct. 341, 344, 58 L.Ed. 652] (1914); Agnello v. United States, 269 U.S. 20, 30, [46 S.Ct.

4, 5, 70 L.Ed. 145] (1925). This right to search and seize without a search warrant extends to things under the accused's immediate control, Carroll v. United States, supra, 267 U.S. [132], at 158, [45 S.Ct. 280, at 287, 69 L.Ed. 543] . . . .' "

■ Since the search was legal the policeman making the search may in the instant case testify to what he saw and found. Error does not appear in that respect.

■ The legality of the arrest for drunkenness did not depend upon anything the appellant said about his having been drinking beer, wine and whiskey, and such statements had no injurious effect on the issue of his guilt of possessing heroin. Such statements related in no way to the possession of heroin, and their admission into evidence is not reversible error.

The appellant complains on this appeal that the refusal of the trial court to allow the appellant to testify on voir dire outside the presence of the jury as to the facts surrounding the statements that Lt. Hayes testified appellant made to him was error.

In Duncan v. State, 278 Ala. 145, 165, 176 So.2d 840, 859, the Court stated:

"We are clear to the conclusion that whenever a motion is made for the question of the voluntariness of the confession to be determined outside the presence of the jury, the motion should be granted. In such a hearing, the trial judge sitting alone should make a determination upon a proper record of the issue of voluntariness. At such a hearing the defendant may take the stand and testify for the limited purpose of making a record of his version of the facts and circumstances under which the confession was obtained. By so doing, the defendant will not waive his right to decline to take the stand in his own defense on the trial in chief nor will he waive any of the other rights stemming from his choice not to testify. . . . ' "

The Supreme Court of Alabama in *Duncan,* supra, quoted with approval from the opinion in Taylor v. State, 42 Ala.App. 634, 174 So.2d 795, the following:

> "Before the voluntariness of the confession is determined by the trial court, the court should receive and hear any testimony offered by the accused tending to show that the confession was not made voluntarily. Jackson v. State, 83 Ala. 76, 3 So. 847; White v. State, 260 Ala. 328, 70 So.2d 624, and the accused should be given the opportunity to present such testimony on voir dire, in the absence of the jury. See United States v. Carignan, 342 U.S. 36, 38, 72 S.Ct. 97, 96 L.Ed. 48; Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908; Rudolph v. Holman, D.C., 236 F.Supp. 62.

> "Here when appellant's counsel indicated that he had completed the voir dire examination of Sheriff Paul and stated that he had other witnesses on voir dire, the trial judge, by his ruling, to which counsel excepted, precluded any opportunity for appellant to put on other witnesses in the absence of the jury for the purpose of showing that his confession was not voluntary This was error for which the judgment must be reversed and remanded. . . . "

In the instant case it is true that after the trial judge denied the appellant's request to take the stand on voir dire outside the presence of the jury he later took the stand on the trial in chief and denied making any statement to Lt. Hayes or even talking to him. The attorney general in his brief argues that if there was error in the refusal of the trial court to permit the appellant to testify on voir dire that it was rendered harmless when the appellant later took the stand and merely denied the existence of such a statement and did not then testify to anything concerning its voluntariness. We do not find a case directly on this point and none has been cited to us. However the existence of a confession is as important as its voluntariness. Certainly the State must show that as well as its voluntariness. If, on voir dire examination outside the presence of the jury, a defendant is refused the right to take the stand and deny the existence of a confession, such refusal has great coercive force in compelling him to take the stand on the trial in chief and subject himself to cross-examination on all matters involved in the case. Self-incrimination cannot thus be imposed on a defendant. Such a situation may well serve as an inducement to perjury on the part of defendant in order to get around a confession that is in evidence which a defendant claims was never made. If the confession was not made at all it was not voluntarily made. Further, the trial judge could only speculate at the time of voir dire examination what his testimony would be on the trial in chief. Notwithstanding his testimony on the trial on its merits, there remains a matter of speculation as to whether it would have been the same since his taking the stand, at that time, may not altogether be a voluntary act. We are not here approving perjury. We are disapproving a situation which might strongly tend to produce it.

■ Placing those arguments aside he had a right to testify on voir dire outside the presence of the jury without submitting himself to cross-examination on matters not then the subject of inquiry and thus preserve his constitutional right of freedom from self-incrimination. He cannot be forced to waive that right by a refusal to permit him to testify on voir dire. See Taylor v. State, 42 Ala.App. 634, 174 So.2d 795, and *Duncan,* supra. That refusal constitutes reversible error.

■ We here turn our attention to the sufficiency of the warning given by Lt. Hayes. The sufficiency of this warning was established in Embrey v. State, 283 Ala. 110, 214 So.2d 567, and Manassa v. State, 47 Ala.App. 287, 253 So.2d 356. Even though the warning is held to be sufficient, there remains the requirement that the appellant must consent to make a statement voluntarily. In Miranda v. Arizona,

384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, it is stated:

"Likewise, if the individual is alone and indicates in any manner that he does not wish to be interrogated, the police may not question him."

 In the instant case he said he did not want to talk about it. In the face of that assertion Lt. Hayes was permitted to testify to statements made by the appellant highly incriminating, showing him to be an addict and therefore possessing an urge for the possession of heroin. Reversible error was thus made to appear.

We have searched the record and find no error other than those noted.

For the errors stated it is ordered and adjudged that the judgment in this cause be reversed and the cause remanded.

The foregoing opinion was prepared by L. S. MOORE, Supernumerary Circuit Judge, and adopted by this Court as its opinion.

Reversed and remanded.

PRICE, P. J., and CATES, ALMON and TYSON, JJ., concur.