298 So.2d 37

**David Lee TURK**

**v.**

**STATE.**

**5 Div. 201.**

Court of Criminal Appeals of Alabama.

July 16, 1974.

Jones, Murray, Stewart & Yarbrough, Montgomery, for appellant.

William J. Baxley, Atty. Gen., and David W. Clark, Asst. Atty. Gen., for the State.

HARRIS, Judge.

Appellant was convicted of robbery and sentenced to fifteen (15) years in the penitentiary. He was represented at arraignment and trial by court-appointed counsel. He pleaded not guilty to the indictment. New, and retained, counsel represents him on appeal; however, he sought and obtained a free transcript of the evidence.

On Tuesday, April 10, 1973, a lone bandit entered the Crossroads Grocery on Highway 11, three miles south of Loachapoka, Lee County, Alabama, which was owned and operated by Willie E. Bell. The time was 9:00 P.M. Mr. Bell was alone in the store at the time. The store was well lighted. The robber approached the counter on which sat the cash register and behind which Mr. Bell was standing. The robber leaned on the counter holding a one dollar bill in his left hand and had his right hand in his pocket. He asked Mr. Bell for a package of Kool cigarettes. The cigarette case was a few feet away. Mr. Bell got the cigarettes and as he turned around to deliver the cigarettes, he saw the bandit pointing a .25 automatic pistol straight at his chest and the man said, "This is a holdup." The bandit told Mr. Bell, "You have got to get in the back

room." As Mr. Bell started to comply with this order, the man told him to "open that cash register." Mr. Bell opened the cash register and the man marched him to the back room. The lock to the back room was broken, but the door could be closed by putting the lock in a hasp on the outside or store side of the door. The bandit forced Mr. Bell inside the back room and put the lock in the hasp and twice threatened to kill Mr. Bell. There was a slot in the door and Mr. Bell looked through this slot and saw the bandit go to the opened cash register and remove all the currency. Mr. Bell had just counted the currency and he had $631.00 in paper money. The bandit took all the currency of various denominations and left the store. Mr. Bell watched the bandit leave the store and turn to the right which led to an unpaved road behind the building.

■ The indictment charged that $600.00 was taken and the proof showed $631.00 was the amount taken. In a robbery prosecution the amount of money taken is immaterial. Wilson v. State, 268 Ala. 86, 105 So.2d 66.

After the bandit left, a school teacher at Loachapoka entered the store and heard noises in the back room. He went to the back room and removed the lock from the hasp and let Mr. Bell out. Mr. Bell told the teacher that he had just been robbed and to call the sheriff. The teacher called the Police Department at Notasulga, and they in turn called the Lee County Sheriff's Department. An investigator from the sheriff's office arrived at the store in twenty minutes to conduct the investigation. He asked Mr. Bell for a description of the robber and Mr. Bell said, "He was a Negro male about 17 to 18 years of age, about 5 foot seven, about 125 pounds, wearing a black hat flopped down over his ears, and wearing a light tan jacket."

Mrs. Bell had been in the store with her husband just before the robbery but had gone to the restroom located on the far side of the Bell Warehouse some 50 to 60 feet away and in the direction the bandit turned after leaving the store. While in the bathroom Mrs. Bell heard an automobile crank up on the dirt road behind the warehouse and leave in the direction of Notasulga. While the school teacher was calling the law officers, Mr. Bell went in search of his wife to see if she had encountered the robber. He met her between the store and the warehouse and informed her of the robbery.

A few days later Mr. Bell was asked to come to the Lee County Sheriff's Department and view a line-up consisting of five or six Negro males in the age range of the man described by Mr. Bell. Mr. Bell did not identify anyone, but did say that one of the men resembled the man who had robbed him. Appellant was not in the line-up.

The investigator carried a stack of photographs to Mr. Bell to see if he could identify the person who robbed him. Mr. Bell could not identify anyone in the stack of photographs.

Sometime later the sheriff's investigator saw a Negro male at the sheriff's office who fit the description of the robber given him by Mr. Bell, but he did not arrest the suspect. A confidential informer, who had proved reliable in the past, informed the investigator that appellant and his brother were probably involved in the Bell robbery. Acting on this information, the investigator learned that appellant lived with an aunt in Auburn. He went to the Auburn Police Department and asked for photographs of appellant and his brother as there had been a series of robberies in the Auburn area recently and the Auburn Police might have photographs of these two suspects. The Auburn Police Department did have photographs of appellant and his brother. The investigator selected four additional photographs of Negro males of ages 17 and 18 and carried the six photographs of these Negro males to Mr. Bell. Without the slightest hesitation, Mr. Bell picked out the photograph of appellant.

The investigator learned that appellant was employed at the Small Animal Clinic in Auburn. Acting on the positive identification made by Mr. Bell, the investigator and another officer went to the clinic on April 30, 1973, and arrested appellant. He was wearing a black cloth flop hat at the time. The officers told appellant that he was wanted for robbery and gave him the *Miranda* rights and warnings. Appellant asked the officers what place he was supposed to have robbed and they said, "Bell's Crossroads Grocery in Loachapoka." Appellant asked what date and was informed it was April 10th. Appellant then asked what time the store was robbed and the officers told him, "about 9:00 o'clock." Appellant laughed and said he could not possibly have robbed it because he was at work that night. He told the officers that his hours of employment were from 2:00 in the afternoon until 10:00 p. m. at night. Appellant requested the officers to carry him to Bell's store to see Mr. Bell. The officers told appellant they were not supposed to take him as it was against his constitutional rights for them to do so. Appellant then *demanded* that the officers take him to see Mr. Bell. The officers put him in the car and drove him to the Bell store. He was still wearing the black cloth flop hat. As the officers and appellant walked in the store, Mr. Bell said, "That is the man that robbed me. I am positive." Appellant did not then and there deny the charge. He was carried to the Lee County jail and booked for robbery. Appellant was never put in a line-up.

Following up the investigation, the officers went back to the Small Animal Clinic in Auburn and talked to Mr. Burl Benner, an employee of Auburn University who was appellant's supervisor. Mr. Benner kept daily records showing the hours of employment of appellant and the other employees of the clinic. He also made up the weekly payroll. Mr. Benner went over the daily employment records with the officers. He told the officers that appellant had one day a week off and that was on Thursday of each week. The daily records showed that appellant worked on Monday, April 9, 1973, and on Wednesday, April 11, 1973, *but he did not work on Tuesday, April 10, 1973, the date of the robbery.* The records kept by Mr. Benner were identified by him and introduced in evidence. Mr. Benner testified that he worked at the clinic on April 10, 1973, *and that appellant positively did not come to work on Tuesday, April 10th.*

Appellant's alibi defense was shot down by his own supervisor at the Small Animal Clinic, Auburn University at Auburn.

At trial the overriding issue was that of identity, laying aside the alibi defense which simply did not stand up.

Present at the line-up viewed by Mr. Bell was an Opelika attorney who had been appointed to represent a man in the line-up. This attorney testified that during the line-up view when no one had on a floppy, that Mr. Bell picked out one man and said, "That is the man." He further testified that when all were required to put on a floppy hat, Mr. Bell said, "I believe that's the man." The man's name was Joe Morgan. As above noted, appellant was not in this line-up.

The sheriff's investigator and the Sheriff of Lee County, Mr. Jim Pearson, were both present when Mr. Bell viewed the line-up. Both testified that Mr. Bell did not point to a man in the line-up and say, "That is the man" or that, "I believe that's the man." Both further testified that Mr. Bell did say one of the men in the line-up *resembled* the man that robbed him, but that is as far as he went toward making any kind of an identification.

Prior to trial, appellant filed a written motion to suppress all evidence seized from his person at the time of his arrest and all evidence seized or obtained from his person following his arrest on the ground there was no probable cause for his arrest. This motion was heard out of the presence

of the jury and the court denied the motion.

Title 15, Section 154, Code of Alabama 1940, provides, in pertinent part, as follows:

"§ 154. Arrest by officer without warrant; when and for what allowed.—An officer may also arrest any person, without warrant, on any day and at any time . . . when a felony has been committed, and he has reasonable cause to believe that the person arrested committed it . . ."

■ "The presence or absence of reasonable cause must be determined by examining the circumstances surrounding the arrest." Sellers v. State, 48 Ala.App. 178, 263 So.2d 156. See also, Yeager v. State, 281 Ala. 651, 207 So.2d 125; Maples v. State, 44 Ala.App. 491, 214 So.2d 700.

■ Mr. Bell described the robber as to age, height, weight, and how he was dressed and in particular that he was wearing a black hat flopped down over his ears. He viewed a line-up and did not see the man who robbed him. He was shown a stack of photographs and did not recognize the bandit. He was later shown six photographs and identified the robber. This was a positive identification and acting on this, the officers had every reasonable cause to arrest appellant without a warrant. When they went to arrest him, he was wearing a black flop hat precisely as described by Mr. Bell. Had the officers failed to arrest appellant at the time and place of his arrest, they would have been guilty of a grave dereliction of duty.

■ Where the arrest is valid the officers have a right to take articles from his person. Thomas v. State, 50 Ala.App. 227, 278 So.2d 230; Sellers v. State, supra; Moon v. State, 48 Ala.App. 127, 262 So.2d 615; Reese v. State, 49 Ala.App. 167, 269 So.2d 622.

The black flop hat was on appellant's head at the time of his arrest and was, therefore, in plain view. Moffett v. State, 291 Ala. 382, 281 So.2d 630.

■ There was no error in denying the motion to suppress nor was there error in admitting the hat in evidence.

■ Appellant contends that pre-trial identification confrontations are a critical stage of the prosecution at which the accused has a constitutional right to the assistance of counsel and, absent an intelligent waiver, evidence of such identification should not be admitted. With this proposition, we are in full accord but there are two short answers to this proposition as far as this case is concerned: (1) appellant was given the *Miranda* rights and warnings and said he understood them, and (2) he was never placed in a line-up.

■ Appellant's alibi had already been destroyed before he took the stand in his defense. He simply denied that he was in Loachapoka on the night of the alleged robbery and that he did go to the Bell store and rob it.

There was no error in overruling appellant's motion to exclude the state's evidence, nor was there error in denying the motion for a new trial.

The refused charges that contained correct principles of law were adequately covered in the oral charge or in the given charges.

We find no error to reverse and the case is due to be affirmed.

Affirmed.

ALMON and TYSON, JJ., concur.

CATES, P. J., and DeCARLO, J., not sitting.