HARRIS, Presiding Judge.
Michael Hood was convicted in the Municipal Court of Bessemer, Alabama, in March of 1979, on two charges, (1) assault and battery, and (2) resisting a lawful arrest. On the assault and battery charge he was assessed a fine of five hundred dollars and costs. He was also sentenced to six months hard labor for the City of Bessemer. On March 22,1979, he posted a five hundred dollar surety bond and appealed his conviction to the Bessemer Division of the Circuit Court of Jefferson County. He demanded a jury trial on the bond. He was convicted on the charge of resisting arrest and assessed a fine of two hundred dollars and costs. He was sentenced to jail for 22 days for the non-payment of the fine. He appealed this conviction to the Bessemer Division of the Circuit Court of Jefferson County by posting a surety bond in the amount of three hundred dollars and demanded trial by a jury.
His de novo trial in the circuit court was held in August of 1979. The jury returned a verdict of guilty as charged for resisting arrest and fixed the fine at five hundred dollars. The jury also returned a guilty verdict on the assault and battery charge and fixed the fine at five hundred dollars. As additional punishment the court sentenced appellant to six months hard labor for the City of Bessemer on each charge but ordered that the two sentences run concurrently.
Appellant, William Hood, was convicted in the Municipal Court of Bessemer, Alabama, of assaulting a police officer. He was assessed a fine of five hundred dollars and costs, and he was sentenced to six months hard labor on the streets of the City of Bessemer. On March 22, 1979, he appealed this conviction to the Bessemer Division of the Circuit Court of Jefferson County and posted a surety bond in the amount of five hundred dollars. He demanded a trial by jury.
His de novo trial in the circuit court was held on December 4, 1979. The jury returned a verdict of guilty as charged and assessed a fine of one dollar against him. As additional punishment the court sentenced him to 60 days hard labor for the City of Bessemer. He gave notice of appeal and his bond was set at $1,000.00.
Both of these appeals were consolidated and only one brief was filed by the parties for these appeals. We will write one opinion to govern both appeals as the issues presented are essentially the same.
6 Div. 149 — -Michael Hood.
When this case was called for trial the attorney for the City of Bessemer, Honorable Jack H. McEniry, filed in open court and served appellant and his counsel copies of the following complaints:

*712 whose name is otherwise unknown, did violate Section 116 . Chapter 15 of the Bessemer City Code, in this:
“That he did, on to-wit, the 11th day of February, 1979, at or near 19-B Shades Street, knowingly or wilfully oppose or resist Officer J. L. Holdridge of the City of Bessemer while said officer was making or attempting to make a lawful arrest.
“And said City of Bessemer avers that said offense was committed within said City or within the police jurisdiction thereof, and that said Section of said Code reads in part as follows:
Sec. 15-116. Resisting arrest.
“(a) No person shall knowingly or wilfully oppose or resist any officer of the City in serving, executing, or in attempting to serve or execute any legal process, or in making or attempting to make any lawful arrest, or in the discharge of any lawful duty.
“And the said City of Bessemer avers that the aforesaid Section and Chapter of said Code was regularly and legally adopted as is required by law, and is a rule of conduct or regulation prescribed and required by the City of Bessemer, and that said Section and Chapter of said Code was in full force and effect at the time of the Commission of the offense herein complained of.
/s/ J. H. McEnirv Attorney for City of Bessemer”

whose name is otherwise unknown, did violate Section 121 . Chapter 15 of the Bessemer City Code, in this:
“That he did, on, to-.wit, the 11th day oi February, 1979, at or near 19-B Shades Street, strike J. L. Holdridge with his fist.
“And said City of Bessemer avers that said offense was committed within said City or within the police jurisdiction thereof, and that said Section of said Code reads in part as follows:
Sec. 15-121. Assault and Battery.
“No person shall commit an assault or an assault and battery upon another.
“And the said City of Bessemer avers that the aforesaid Section and Chapter of said Code was regularly and legally adopted as is required by law, and is a rule of conduct or regulation prescribed and required by the City of Bessemer, and that said Section and Chapter of said Code was in full force and effect at the time of the Commission of the offense herein complained of.
/s/ J. H. McEnirv Attorney for City of Bessemer.”
Appellant pleaded not guilty to the charges laid in the complaints and the trial began.
Police Officer John Grimes testified that, on the late afternoon of Sunday, February 11, 1979, he and his partner, Police Officer James Holdridge, were on routine patrol when they received a radio dispatch to proceed to 19-B Shades Street in the Jonesboro area of the City of Bessemer. The dispatch was a “10 — 35” code call which could mean almost anything. The officers were not given any other information in the radio dispatch and they proceeded to that address. When they arrived at 19-B Shades Street they saw an unidentified woman standing on the porch and the officers asked her if she had called the police. She replied that she had not called the police and “that she didn’t even like the police.” Officer Grimes then picked up the radio and called headquarters and told the dispatcher what the woman told them and requested to be put back in service and they drove away. After driving about a half of a block the officers received another dispatch directing them to return to that address and see if the woman was a Christine Sturdi-vant. They returned to that address and *713 asked the same woman if she was Christine Sturdivant and she said no. The officers started to leave again when a car pulled behind their patrol car and began sounding the car horn.
The woman who drove behind the patrol car was Christine Sturdivant and she got out of the car and walked to the patrol car and identified herself. She started telling the officers that she and William Hood were divorced and he had their child and refused to give the child back to her. At this time William Hood and his brother, Michael Hood, appeared on the front porch of the dwelling at 19-B Shades Street and were standing side by side. Officer Grimes asked Christine Sturdivant if they were legally divorced and before she could answer William Hood started cursing. He told Sturdivant to get “her G.D. a_ out of there,” and told the officers “to take their M.F. a’s out too.” At that time Officer Grimes walked up on the porch beside William Hood and asked him to “quieten down until we got the situation settled.” William Hood told Officer Grimes, “He didn’t have to do a_thing,” and struck officer Grimes in the eye, knocking him over the railing and he ended up face down on the ground with William Hood on top of his back where he remained for several minutes. When William Hood hit Officer Grimes, Officer Holdridge started up on the porch and was struck by Michael Hood and they began to struggle and fight.
During the fight a crowd of people gathered, estimated to be 25 to 30, and they began to hit, kick and stomp Officer Grimes while he was held prostrate and helpless by William Hood. One woman tried to take Officer Grimes’s revolver out of his holster, saying, “Get the pig’s gun and shoot him.”
Officer Holdrige managed to get away from Michael Hood and went to the patrol car and radioed for help. He then returned to Officer Grimes and pulled William Hood off the back of Grimes. A back-up unit arrived in about five minutes with the blue light and siren on. The crowd of people dispersed with some of them leaving the premises and Michael and William Hood ran into the house at 19-B Shades Street and barricaded the door. Police Officers Smith and Johnson arrived on the scene in response to the call from Officer Holdridge. The officers forced open the door and Officer Smith was the first to enter the house and he saw William Hood with what appeared to be a shotgun in his hand. He exclaimed, “Look out he has a gun,” but it turned out to be a broom handle and William Hood struck Officer Smith with the broom handle. At the same time Michael Hood jumped on Officer Johnson. Several other police officers arrived at the scene and the Hood brothers were subdued. They were arrested, put in a patrol car and transported to headquarters where Michael Hood tried to escape. He was soon apprehended by another officer and returned to the Bessemer jail.
Appellant did not testify in his behalf. It was his right not to take the witness stand. It may be that he did not want the jury to know that he had previously been convicted for the possession of marijuana. He was granted probation and that probation was revoked based upon the offenses committed in this case.
It was admitted that Officers Grimes and Holdridge did not have an arrest warrant for either of the Hood brothers when they went to 19-B Shades Street to investigate a complaint. Michael and William Hood were arrested for offenses committed in the presence of the officers.
6 Div. 221 — William Hood.
When this case was called for trial in the circuit court the attorney for the City of Bessemer filed in open court and served appellant and his counsel with a copy of the following complaint:

*714 whose name is otherwise unknown, did violate Section 121 . Chapter 15 of the Bessemer City Code, in this:
“That he did, on, to-wit, the 11th day of February, 1979, at or near 19-B Shades Street, strike Officer Johnny Grimes with his fist.
“And said City of Bessemer avers that said offense was committed within said City or within the police jurisdiction thereof, and that said Section of said Code reads in part as follows:
Section 15-121 Assault and Battery.
“No person shall commit an assault or an assault and battery upon another.
“And the said City of Bessemer avers that the aforesaid Section and Chapter of said Code was regularly and legally adopted as is required by law, and is a rule of conduct or regulation prescribed and required by the City of Bessemer, and that said Section and Chapter of said Code was in full force and effect at the time of the Commission of the offense herein complained of.
/s/ J. H. McEnirv Attorney for City of Bessemer.”
Appellant pleaded not guilty to the charge laid in the complaint and the trial began.
The facts set forth hereinabove are applicable to this case and will not be repeated. However, William Hood testified in his case. According to his testimony he lived at 2114 6th Avenue in Bessemer and was employed at Pullman Standard.
He stated that, on February 11, 1979, he received a telephone call from Christine Sturdivant to whom he was formerly married. A daughter was born to this marriage and when they were divorced custody of this child was awarded to the mother with visitation rights given to William Hood. Under the divorce decree William Hood was to have custody of the child from Friday afternoon until Sunday afternoon each week. When Christine called on the afternoon of February 11, 1979, William Hood told her she could not get the child. Christine told him if he did not return the child to her she was going to bring the police to his house to pick up the child. He further testified that the police came to his house twice on Sunday afternoon but he was in the house with the child and the woman he was living with and he remained in the house. The police car left but soon returned and he came out of the house to the front porch. About that time his ex-wife pulled up behind the patrol car and got out of her car. He told her that she could take her_ and the police and get away from his house. He further testified that, “Officer Grimes and Officer Holdridge had come closer to the porch, but Officer Grimes made one step up on the porch, and he told me to shut up, boy, or I will shut you up, and I proceeded to tell him that I knew my right, I was at home, I wasn’t bothering anybody and he could just go . . . I turned to go into the house when he struck me with his night stick in the back of my head. When he struck me, I just turned around and grabbed him and bounced off the wall and we went over the railing of the porch into the front yard. I had him down, face down on the ground."
He further stated that his brother, Michael, and Officer Holdridge pulled him off Officer Grimes. He said when the officers got through beating him at the police station he had two teeth missing but they were all false teeth; that he was in the hospital twelve days and had minor surgery on his left eye; that his whole face was swollen but he did not have a concussion.
On cross-examination he admitted that his ex-wife called him earlier and asked him to return the child to her and he told her he was not going to give the child back to her. He said his ex-wife told him that she was going to bring the police to help her get her child back. In sum, he testified that he did not curse the police officers and that when he entered the house after the difficulty with Officer Grimes he did not arm himself with a broom handle. In short, he was the only witness who was telling the truth about the occurrences at his house on Sunday afternoon, February 11, 1979. He made no claim that his injuries which caused him to be hospitalized for twelve *715 days occurred at his home but occurred after he was transported to the Bessemer jail.
Appellant’s counsel contends that the circuit court never acquired jurisdiction to try these cases because the City of Bessemer failed to comply with the provisions of Section 12-14-70, Code of Alabama 1975, which mandates the filing of all documents and papers necessary to prosecute a misdemeanor in the circuit court within 15 days after a timely appeal is taken, and having never acquired jurisdiction the judgments of conviction were void as a matter of law.
Section 12-14-70, 1975 Code provides, in pertinent part, as follows:
“(d) When an appeal has been taken, the municipality shall file the notice and other documents in the court to which the appeal is taken within 15 days, failing which the municipality shall be deemed to have abandoned the prosecution, the defendant shall stand discharged, and the bond shall be automatically terminated.”
Section 12-22-110, 1975 Code, also provides for an appeal from the judgment of conviction in a municipal court. This section reads as follows:
“When an appeal is taken to a circuit court in any criminal case from a district court or municipal court, the appeal shall be returned to the circuit within 10 days following the day on which the appeal was taken and shall be triable at the next session of the court.” (Emphasis supplied).
The above quoted sections are conflicting but we do not deem it necessary to determine which section controls appeals from a municipal court. We feel that both sections are directory. A municipal court clerk’s failure to file a copy of proceedings had in such court in the circuit court within the statutory time is not ground to quash the circuit court proceedings on appeal from a conviction of a misdemeanor in a municipal court. Tribble v. State, 28 Ala.App. 567, 190 So. 101.
There was no motion to quash filed in the circuit court and this matter cannot be raised for the first time on appeal even if such issue contained any merit.
In Thompson v. State, 26 Ala.App. 264, 157 So. 886, the Court of Appeals in construing Section 12-22-110, supra, as it appeared in the Codes of 1923 and 1940, held that this section is directory only, and, “upon a failure on the part of the inferior court to send up the appeal, renders such court subject to the supervisory power of the court to which the appeal is taken, and the only effect of a failure to send up the record within the time named is to delay the trial in the circuit court until such record can be procured.”
In Clark v. City of Mobile, Ala.Cr.App., 357 So.2d 675, certiorari denied, Ala., 357 So.2d 680, this court held that a judgment on trial de novo is not rendered void for want of jurisdiction where the original affidavit is not in the record. Jurisdictional recitals in the appeal bond(s) give the court to which the trial de novo “appeal” is taken jurisdiction of the case(s). In addition, as we have stated, the City Attorney filed in open court and served appellants and their counsel with complaints charging them with the crimes for which each stands convicted and the record(s) affirmatively show appellants pleaded not guilty to the charges spelled out in the complaints.
The City Ordinances of the City of Bessemer under which appellants were charged and convicted were duly adopted, properly certified, and introduced into evidence. There is no contention to the contrary.
Appellants contend that they were unlawfully arrested without a warrant. We do not agree.
Police officers may arrest any person without a warrant, on any day and at any time, for the violation of a City ordinance committed in their presence. Coursey v. City of Andalusia, 24 Ala.App. 247, 134 So. 671; Moon v. State, 48 Ala.App. 127, 262 So.2d 615; Section 15-10-3, 1975 Code of Alabama; Ala. Dig. Arrests, Key No. 63.3.
The authorities cited by appellants are not in point as these authorities deal with *716 search warrants. These are not search warrant cases. The arrests grew out of public offenses committed in the presence of the arresting officers.
The refused written charges, stating correct principles of law, were fully and adequately covered in the court’s oral charge to the jury. The other refused charges were abstract, misleading or argumentative and were properly refused.
We have carefully searched the records for errors injuriously affecting the substantial rights of appellants and have found none. The judgments of conviction in both cases are, in all things, affirmed.
AFFIRMED.
HARRIS, P. J., and TYSON and DeCAR-LO, JJ., concur.
BOOKOUT, J., concurs specially with opinion, in which BOWEN, J., joins.