214 So.2d 700

John D. **MAPLES**

v.

**STATE.**

1 Div. 268.

Court of Appeals of Alabama.

Oct. 8, 1968.

Jas. B. Kierce, Jr., and Augustine Meaher, III, Mobile, for appellant.

MacDonald Gallion, Atty. Gen., and Walter S. Turner, Asst. Atty. Gen., for the State.

PRICE, Presiding Judge.

The indictment charges the possession of "Morphine Sulphate." Appellant was found guilty as charged and was sentenced to two years' imprisonment in the penitentiary. He appeals.

For the State Mobile Police Sergeant O. L. Mosley testified that while on routine patrol about eleven a. m., May 29, 1966, he observed defendant and a man named Paul Cazalas at the intersection of Mobile Street and Springhill Avenue. As he approached them he radioed for another police car to come to the scene. While waiting for reinforcements he asked the men for identification. After the arrival of Officers Yates and McNealy, Cazalas handed defendant an amber colored bottle containing white pills. Defendant took the bottle and put it on the window ledge close by. Officer Mosley reached around Cazalas and picked up the bottle. Cazalas then threw another amber colored bottle into the street. The witness retrieved this second bottle.

On cross examination Officer Mosley testified he had known Paul Cazalas for several years and knew he had a police record of narcotic violations. Before he saw the men he had been told "there was some suspicious actions" and as he approached them he saw that they were "stepping high, talking to one another and turning around, happy state, and they crossed Springhill Avenue in front of me and same actions." He was about a block away when he first saw them. He radioed for help because he knew the men and suspected the condition they were in. He reconstructed the encounter in these words:

"I pulled up. And when I pulled up Mr. Cazalas looked around and hollored, 'Hey, there,' real friendly like and I said, 'Hi, how are you doing?' I said,

'Where are you headed?' I don't remember the answer they gave but I got out of the car and started talking to them, asked them where they was going. I could see some bulges in Cazalas' pocket, but none in defendant's pocket. Cazalas started backing up and said, 'What do you want to know what I got in my pocket for?' And I said, 'Well, you ain't trying to hide something?'"

This is about the time Cazalas took the bottle from his pocket and handed it to defendant, who set it on the ledge. Cazalas threw two bottles to the ground. One contained 200 pills and the other had 81. The only thing he saw defendant do was to take the bottle of pills from Cazalas and put it on the ledge. The witness did not have a warrant for the arrest of defendant nor a warrant to search him, and he did not search him.

On redirect examination Officer Mosley testified he had been a police officer for twenty-two years and had had occasion during this period to observe people under the influence of narcotic drugs and alcohol; that it was his opinion defendant and Cazalas were under the influence of alcohol or some type of drug. On recross examination Mosely testified Paul Cazalas was dead, having died from an overdose of narcotics.

Officers McNealy and Yates testified that when they arrived in response to Mosley's call they saw the defendant throw a Cigarette package onto the ground. The package contained three white pills and one Cigarette. All of these articles were turned over to Detective Romagnano.

On cross examination Officer Yates, in response to the question, "How did Mr. Maples appear to you," stated: "Appeared to be just about two thirds intoxicated someway. He wasn't like he is now. There was something wrong with him. * * * he was under the influence of something * * * his eyes were red and he looked like he had—You know, like maybe you hadn't slept for some several days;

the whites of his eyes were showing pretty * * *." He did not smell liquor on his breath.

Officer McNealy, on cross examination, stated when he reached the scene defendant was "talking and carrying on." He was "acting normal to me." * * * "Just like he is now."

Police Detective Romagnano testified that on May 29, 1966, he received from Officers Mosley, McNealy and Yates two bottles containing white tablets and a Cigarette package containing three tablets. One bottle contained 200 tablets, the other 81 and the Cigarette package, three. He delivered these articles to Dr. Grubbs, a State Toxicologist.

Dr. Nelson E. Grubbs testified he is head of the Mobile division of the State Department of Toxicology; that he received from Detective Romagnano on May 29, 1966, one amber bottle containing 200 white tablets, one amber bottle containing 81 tablets and a Cigarette package containing three white tablets and one Cigarette; that he made a chemical analysis of the tablets; that the tablets in the bottle as well as those in the Cigarette package consisted of Morphine Sulphate and Morphine Sulphate is a narcotic drug.

The only witness offered by defendant was his divorced wife who testified her former husband was an alcoholic and that she knew he was drinking heavily around May 29, 1966, but that she never knew him to use or possess narcotics while she was married to him, and Police Captain Stowe, who testified he had not been requested to take fingerprints from the Cigarette package marked State's exhibit 2.

A motion to suppress the evidence was timely interposed by defendant and denied by the trial court.

After the state had rested defendant moved to exclude the state's evidence on the ground that it was obtained by an illegal search and seizure. This motion was denied by the trial court.

The appellant's first insistence for a reversal of this conviction is that the state's evidence was the by-product of an illegal search and seizure, relying principally on the case of Williams v. United States, 99 U.S.App.D.C.1961, 237 F.2d 789. The contention is that if there was an arrest before the tablets were thrown to the ground the arrest was without probable cause and hence unlawful; that by virtue of the illegal arrest and because of the fear of an imminent search the defendant threw the evidence to the ground, presenting a state of facts directly within the holding of the Williams case. No facts pertaining to the arrest appear in the Williams case. The opinion states:

"The arrest of appellant was illegal because without a warrant, without probable cause, and without other validating circumstances. The government does not seriously contend otherwise.

"A cigarette package containing capsules which in turn contained contraband narcotics was procured by the officers, who had appellant in custody, when he dropped the package in a corridor of the precinct station shortly after his arrest and when it seemed clear he was to be searched."

Section 154, Title 15, Code 1940, provides in pertinent part as follows:

"An officer may also arrest any person, without warrant, on any day, and at any time, for any public offense committed, or a breach of the peace threatened in his presence; * * *."

In Schook v. United States, 337 F.2d 563 (8th Circuit 1964) the court said:

"Reasonable grounds for suspicion when accompanied by facts or circumstances strong enough to justify a reasonably cautious man to believe the guilt of the suspect, suffice to constitute probable cause necessary for arrest without warrant."

The issue as to whether the arresting officer had probable cause to make ar-

rest without a warrant must be resolved from the facts and circumstances of each particular case. *Schook*, supra; Vincent v. United States, 237 F.2d 891 (8th Circuit 1964).

█ We are of opinion from a consideration of the evidence in the case at bar that Officer Mosley, in the performance of his duties had a responsibility to investigate the suspicious activity of the defendant. From the facts developed he had probable cause for believing defendant at the time was engaged in the commission of a public offense and that the arrest was lawful. Jordan v. State, ante p. 21, 201 So.2d 63.

In Burton v. United States, 272 F.2d 473, cert. denied 362 U.S. 951, 80 S.Ct. 863, 4 L.Ed.2d 869, and Vincent v. United States, supra, where narcotics were discarded by the accuseds prior to arrest after they had seen the officers, the court held there was no search.

The defendant in the present case was in custody when he discarded the narcotics. Terry v. State of Ohio (1968) 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889. But the evidence does not show a search.

█ The motion to suppress the evidence was not well taken and was denied without error. Burton, supra; Vincent, supra.

█ The motion to exclude the evidence was properly denied. The question of admission of illegally obtained evidence may be raised by a pretrial motion to suppress or by objection to such evidence when offered at the main trial. Duncan v. State, 278 Ala. 145, 176 So.2d 840; Brown v. State, 277 Ala. 108, 167 So.2d 291. Objection to evidence must be made when the evidence is offered. Walker v. State, 265 Ala. 233, 90 So.2d 221.

Appellant's next insistence is that the bottle of pills handed to him by Cazalas should not have been introduced in evidence because such a brief handling of the pills did not as a matter of law constitute possession.

In Harbin v. State, 210 Ala. 55, 97 So. 426, possession of prohibited liquors is defined as "(A)ny possession by manucaption or physical dominion, of however brief duration, and in whatever capacity the possession may be held, if it be for the use, benefit, or enjoyment of himself or any other person, and not merely for the purpose of inspection or destruction."

In Sutton v. State (1961), 170 Tex.Cr.R. 617, 343 S.W.2d 452, the Texas court held that the duration or length of time the capsules were under accused's control would not determine the question of her possession of the same. The evidence showed the narcotics were in her possession for only 25 seconds.

The question of defendant's intent in accepting the pills from his companion was for the jury to determine.

█ The following question was propounded to Officers Romagnano, Yates and McNealy on cross examination:

"What is the state of your feeling toward this defendant?"

The State's objection was sustained in each instance. This ruling constitutes reversible error. It is always permissible to cross examine a witness to ascertain his interest, bias, prejudice or partiality concerning matters about which he is testifying. The proper way to show bias on the part of the witness is to ask him directly the state of his feelings, and if he denies bias, then resort may be had to facts tending to show it. Nichols v. State, 276 Ala. 209, 160 So. 2d 619; Meador v. State, 37 Ala.App. 573, 72 So.2d 418.

Reversed and remanded.