*263 So.2d 156*

**Foster SELLERS**

v.

**STATE.**

**4 Div. 40.**

Court of Criminal Appeals of Alabama.

May 30, 1972.

Joseph A. St. Ana, Jacksonville, Fla., for appellant.

MacDonald Gallion, Atty. Gen., and Joseph Victor Price, Jr., Asst. Atty. Gen., for the State.

an office on a dead-end street which bore marks of forcible entry and from which several items were discovered missing. The missing items had been found shortly before appellant's arrest in a cache near the office. A search of appellant's person after his arrest produced a section of hose which was later identified by a former state toxicologist as having been severed from a section of similar hose found in the office by the police. Other evidence adduced by the State included testimony by the toxicologist that paint smudges on a crowbar found in the cache of the stolen articles were similar to paint scrapings taken by the police from the sill of an open window in the office. The toxicologist also testified that a plaster cast of a footprint found under the open window was similar in size and sole pattern to shoes which appellant was wearing when he was arrested.

Appellant's first contention on appeal is that the State denied to him his constitutionally protected right to a speedy trial by bringing him to trial in September, 1969, on an indictment returned in June, 1964. A full evidentiary hearing was held on appellant's motion to dismiss the indictment on this ground prior to the trial and the trial court denied the motion. At that hearing testimony was introduced which tended to show the following facts:

The offense was committed and appellant was arrested on May 20, 1964. He was indicted on June 10, 1964. While appellant was free on bond pending trial on the indictment he was convicted by a Georgia court for a separate offense on July 7, 1964. On September 28, 1964, the Sheriff of Houston County was notified that appellant had been released by Georgia prison authorities. In December, 1964, the sheriff attempted without success to locate appellant.

A Georgia appellate court reversed appellant's conviction on April 19, 1965. In July a detective of the Dothan Police Department traveled to Georgia to attend an extradition hearing but the hearing was

ALMON, Judge.

Appellant was indicted in Houston County, Alabama, for second degree burglary. After several years delay caused by his imprisonment in the State of Georgia appellant filed a motion to dismiss the indictment on the ground that the State of Alabama had denied him his constitutional right to a speedy trial. He also entered a special plea requesting discharge from the indictment on the ground that he had been discharged from an Alabama detainer by a Georgia court on a writ of habeas corpus based upon the denial to him of a speedy trial by the State of Alabama. After a hearing at which several witnesses testified the trial court overruled the plea and denied the motion. At a jury trial on appellant's plea of not guilty he was found guilty and the court sentenced him to seven years imprisonment.

Appellant was arrested by Dothan City Police Officers on the night of the offense, along with two other men in an automobile near the burglarized premises,

cancelled. Appellant admitted in his later petition for habeas corpus that the Governor of Georgia had refused to extradite him on this occasion. Appellant was tried and convicted a second time for the Georgia offense on October 12, 1965. In December the Houston County Sheriff again tried to locate appellant and was again unsuccessful.

Neither the State nor appellant made any attempt to expedite trial on the burglary indictment for the next fourteen months (including all of 1966), during which time appellant was incarcerated in a Georgia prison. Then in February and March of 1967 the District Attorney of Houston County telephoned state and federal correctional authorities in an attempt to locate appellant and finally succeeded in identifying the facility at which he was being held. In April, 1967, the Houston County Sheriff placed a detainer on appellant with the Georgia Board of Corrections. Appellant became eligible for parole under the Georgia sentence in June, 1967, but parole was denied because of the Alabama detainer. On September 7, 1967, appellant wrote a letter to the Houston County, Alabama, District Attorney requesting a speedy trial on the 1964 burglary indictment. The district attorney did not answer the letter but during the following month he again contacted officials in Georgia with regard to obtaining custody of the appellant for trial. On November 17, 1967, the Houston County Sheriff received a letter from Georgia officials which indicated that they believed that his office had withdrawn its detainer on appellant. The sheriff had not in fact withdrawn the detainer and he called the Georgia Attorney General's office to make this clear. During the same month and the one following (December, 1967) the district attorney communicated by telephone and mail with a Georgia Assistant Attorney General and a legal advisor to the Governor of Georgia concerning Alabama's desire to bring appellant to trial and they promised to assist "in every way." The district attorney also learned from these communications that

appellant was apparently being transferred from county to county to avoid extradition, that he "had some kind of political help in certain counties where he went," and that for this reason it would be difficult for the Alabama officials to gain custody. Nevertheless, authorities at the Georgia correctional institution where appellant was then being held agreed to give Alabama custody of the appellant when he had served his sentence there.

After several months of inactivity, in July, 1968, further correspondence and conversation passed between Georgia officials and the Houston County Sheriff and district attorney, and in August the Alabama authorities were informed that they could have custody of the appellant to try the case pending against him. They immediately filed for extradition. On September 16, 1968, Georgia correctional officials at the request of the Houston County District Attorney, asked appellant to sign a waiver of extradition to Alabama, but he refused. On October 7 he petitioned for habeas corpus in a Georgia court alleging that he was being confined not only under the Georgia sentence, which was to expire on October 11, but also by virtue of the charge still pending against him in Alabama. He further alleged that any further imprisonment in Georgia on the Alabama charge would be a denial of his right to a speedy trial guaranteed by the United States Constitution and the constitutions of Georgia and Alabama. On October 11, 1968, the day on which his Georgia sentence expired, the Tattnall County, Georgia, Superior Court granted habeas corpus and ordered appellant's release. Meanwhile the Houston County Sheriff sent detainers on appellant to the sheriffs of a number of counties in Georgia. The district attorney filed for extradition twice more in December, 1968, and a third time on January 2, 1969, apparently to no avail.

Finally, in February or April of 1969, appellant waived extradition, surrendered to Alabama authorities, and entered the plea and motion referred to above.

■ Article 1, § 6, Constitution of Alabama of 1901, provides in part: "[T]he accused has a right to . . . in all prosecutions by indictment, a speedy, public trial . . . ." In addition, the Sixth Amendment to the Constitution of the United States provides: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial . . . ." The federal constitutional guarantee applies to state prosecutions as well as federal by virtue of the Fourteenth Amendment. Klopfer v. North Carolina, 386 U.S. 213, 87 S.Ct. 988, 18 L.Ed.2d 1 (1967). And if a person accused of a crime in one state is incarcerated in another state or in a federal correctional facility, the first state has a constitutional duty to make a diligent, good-faith effort to gain custody of the accused and bring him to trial. Smith v. Hooey, 393 U.S. 374, 89 S.Ct. 575, 21 L.Ed.2d 607 (1969). Under the law of Alabama, however, the accused ordinarily must show that he made a demand for trial, or objected to postponement of the trial, or made some other effort to secure a speedy trial, before he is entitled to be discharged on the ground that his right to a speedy trial has been denied. Elliott v. State, 283 Ala. 67, 214 So. 2d 420, cert. denied, 393 U.S. 1041, 89 S.Ct. 667, 21 L.Ed.2d 589; Ex parte State ex rel. Attorney General, 255 Ala. 443, 52 So.2d 158; Washington v. State, 45 Ala.App. 173, 227 So.2d 805; Autrey v. State, 44 Ala.App. 53, 202 So.2d 88, cert. denied, 390 U.S. 1030, 88 S.Ct. 1422, 20 L.Ed.2d 287. And although there exists a body of opinion which questions the constitutionality of such a rule, see Dickey v. Florida, 398 U.S. 30, 90 S.Ct. 1564, 26 L.Ed.2d 26 (concurring opinion), it has received at least the tacit approval of the United States Court of Appeals for the circuit in which we sit. See May v. Georgia, 409 F.2d 203 (5th Cir., 1969). In the instant case appellant made the requisite demand for a speedy trial by the letter he mailed to the Houston County District Attorney on September 7, 1967, some thirty-nine months after he was indicted and twenty-four months before he was tried.

■ In addition to showing a demand for speedy trial, to make a prima facie case for release an accused normally must also show that actual prejudice resulted from the fact that trial was delayed. Hoskins v. Wainwright, 440 F.2d 69 (5th Cir., 1971); United States v. King, 431 F.2d 734 (5th Cir., 1970); United States v. Fitzpatrick, 437 F.2d 19 (2d Cir., 1970); United States v. Penland, 429 F.2d 9 (9th Cir., 1970), cf. Dickey v. Florida, supra. According to *Hoskins,* supra, if the accused relies on passage of time alone to establish prejudice, he can meet this burden by showing (1) that prosecution was delayed beyond the point at which a probability of prejudice arose; (2) that he himself was not responsible for the delay; and (3) that the State ought reasonably to have avoided the delay. Although appellant may well have fulfilled the first requirement in the instant case, we are not compelled to reach that issue because he failed to fulfill the second and third. He is at least partially responsible for that portion of the delay from September 16, 1968, when he refused to waive extradition to Alabama to September 22, 1969, the date of the trial. And the unrebutted testimony of the State's witnesses at the hearing makes it clear that the State made many diligent and good-faith efforts to gain custody of the appellant, and that these efforts failed, making the delay of the trial unavoidable. This fact prevents appellant from making a prima facie case for release under *Hoskins,* supra, and in addition satisfies the demands which Smith v. Hooey, supra, imposes on a State seeking to prosecute a person recently released from lengthy incarceration in another jurisdiction on a charge which arose prior to that incarceration. See Teets v. State, 322 F.Supp. 695 (N.D.W.Va., 1971). In view of the State's unsuccessful efforts to gain custody of the appellant and his own attempt to thwart those efforts we do not think his constitutional right to a speedy trial was infringed.

Appellant next urges that the trial court erred in overruling his special plea after the hearing previously referred to in this opinion. The plea asserted that the court was bound by the decision of a Georgia court granting habeas corpus and releasing appellant from detention in Georgia because he had been denied a speedy trial on the offense charged in the instant case by the State of Alabama. This assertion is not based on the usual full-faith-and-credit constitutional grounds, but on the novel theory that Alabama statutory rules of criminal procedure compel the courts of this State to discharge appellant after a court in a sister state has granted habeas corpus discharging him from detention in that State. He relies on Tit. 15, §§ 28 and 30, Code of Alabama, 1940, as recompiled 1958. Tit. 15, § 28, provides in part:

"§ 28. If under legal process, when discharged.—If it appears that the party is in custody, by virtue of process from any court legally constituted, or issued by any officer in the course of judicial proceedings before him, authorized by law, he can only be discharged:

. . . . . .

"(2) Where, though the original imprisonment was lawful, the party has become entitled to his discharge by reason of some subsequent act, omission, or event."

Tit. 15, § 30, provides:

"§ 30. After discharge not again arrested.—When a person has once been discharged on habeas corpus, he cannot be again imprisoned, restrained, or kept in custody for the same cause, unless he is indicted therefor, or, after a discharge for defect of proof, is again arrested on sufficient proof, and committed by legal process."

Appellant argues that the Georgia decree constituted a "subsequent act or event" within the meaning of § 28, and that Alabama's failure to pursue his extradition was an "omission" contemplated by the same section. With regard to § 30, appellant contends that the State is barred by that section from prosecuting him for the offense charged in the instant case because he "has once been discharged on habeas corpus" and thus plainly falls within the scope of the statute, even though the discharge on habeas corpus was granted by the court of another state.

We need not address ourselves to the first part of appellant's argument regarding § 28 since even if it were correct, appellant would not be entitled to release under that section because he has not petitioned for habeas corpus on the basis of the Georgia decree in this or any other state, and § 28 is plainly a statute providing for habeas corpus relief alone. The second part of the argument in favor of release under § 28 and the assertion that § 30 applies in other states as well as in Alabama are attempts to give efficacy in the courts of this State to a Georgia decree rendered in an Alabama criminal case. The effect of such a holding by this Court would be to give to any state gaining personal jurisdiction of one accused of a criminal offense in Alabama the power to discharge the accused from any further prosecution by Alabama for that offense. Logically, a sister state would also have the power to try a person similarly situated, to convict him, and to sentence him to pay a fine or to be imprisoned. We are not prepared to adopt this extreme doctrine, nor are we compelled to do so by the United States Constitution. In Huntington v. Attrill, 146 U.S. 657, 13 S.Ct. 224, 36 L. Ed. 1123, the United States Supreme Court stated:

"Crimes and offenses against the laws of any state can only be defined, prosecuted, and pardoned by the sovereign authority of that state; and the authorities, legislative, executive, or judicial, of other states take no action with regard to them, except by way of extradition, to surrender offenders to the state whose laws they have violated, and whose peace they have broken."

And in Nelson v. George, 399 U.S. 224, 229, 90 S.Ct. 1963, 1966, 26 L.Ed.2d 578, 582 (1970), the Court noted that "the Full Faith and Credit Clause does not require that sister States enforce a foreign penal judgment . . . ." Here, we read "foreign penal judgment" to include any foreign judgment in a penal matter, such as a discharge from prosecution.

■■■■ Appellant maintains that the trial court erred in overruling his objection to the admission into evidence of the section of hose take from his person by the police during a search conducted immediately after his arrest. It is well settled, as appellant concedes, that the fruits of a search of the person are admissible if the search which produced them was incident to a lawful arrest. Loper v. State, 44 Ala.App. 204, 205 So.2d 521; Wilson v. State, 43 Ala.App. 596, 197 So.2d 283; Martin v. United States, 301 F.2d 81 (5th Cir., 1962). Appellant correctly contends, however, that since the arresting officers had no warrant for arrest, the State bore the burden under Alabama law of showing reasonable cause to believe that appellant had committed a felony before evidence procured in a search incident to the arrest could be admitted. Appellant relies on Tit. 15, § 154, Code of Alabama, 1940, as recompiled 1958, which provides in part:

"154. Arrest by officer without warrant; when and for what allowed.—An officer may also arrest any person, without warrant, on any day and at any time, . . . when a felony has been committed, and he has reasonable cause to believe that the person arrested committed it . . . ."

■■ He insists that the police officers who arrested him and his companions on the night of May 20, 1964, did not have reasonable cause to believe that he had committed the felony the police were then investigating. The presence or absence of reasonable cause must be determined by examining the circumstances surrounding the arrest. See Yeager v. State, 281 Ala.

651, 207 So.2d 125; Maples v. State, 44 Ala.App. 491, 214 So.2d 700. After discovering the cut fence and the open window in the building which had been burglarized the police detectives investigating the incident followed a "trail" in the weeds to a place near the street, about two-thirds of a block away from the building. There they found the missing items. They waited for the burglars to return, and soon an automobile turned into the dead-end street on which the building was situated and began to drive up the street at night with its lights off. The automobile proceeded two or three hundred yards up the street to a point near the cache of stolen goods and stopped. The detectives then started their automobile and approached the stopped automobile from the front. The driver of the stopped vehicle started his engine, turned on his lights, and started to drive away, but the detectives positioned their vehicle in front of the other so that the latter could not move. Then they got out of their car, drew their pistols, and demanded that the occupants of the halted vehicle get out with their hands up. One of the detectives, State's witness Clark, testified:

"Q. What, if anything, did the people in the car do?

"A. One person went down in the back seat and one in the front seat made a move forward, as if to get something, and at this point we ordered them to get out of the car with their hands up."

At that point all three occupants of the car, including appellant, were arrested and searched. The search produced the piece of hose in question.

■■ The requirement that an officer arresting without a warrant have reasonable or probable cause to believe that the person whom he is arresting committed a felony cannot be satisfied by suspicion alone Duncan v. State, 278 Ala. 145, 176 So.2d 840; See White v. State, 45 Ala.

App. 1, 221 So.2d 117. Rather, "reasonable cause to believe" has been defined as a state of facts in the mind of the officer making the arrest which would lead a man of ordinary prudence to believe that a felony has been committed and that the person to be arrested is guilty of committing it. Union Indemnity Co. v. Webster, 218 Ala. 468, 118 So. 794. It is not necessary that this state of facts in the arresting officer's mind amount to sufficient evidence to convict the person arrested. *Yeager,* supra. And where the officer has reasonable cause to believe a felony has been committed the observed conduct of a suspect may, under certain circumstances, furnish reasonable cause for believing that he is the perpetrator of the felony. Tiner v. State, 279 Ala. 126, 182 So.2d 859.

Here the circumstances of the arrest as shown by the evidence—a darkened automobile pulling into a dead-end street, stopping near a cache of stolen goods, then attempting to drive away when approached by a police vehicle—gave the arresting officers ample cause to believe that appellant and his companions were guilty of burglary and were returning to reclaim the goods they had stolen. Hence the arrest was a valid one and the fruits of the search of appellant's person incident to the arrest were admissible against him.

Appellant further contends the trial court erroneously denied his request for the affirmative charge, both with and without hypothesis. He argues that insufficient evidence of breaking and entering was produced to allow the jury to find appellant guilty of the offense charged. We find no merit in this argument. Police officers who investigated the reported burglary discovered an open window in the building and a hole cut in the fence surrounding the building. Paint flakes scraped from the window sill by one of the officers were similar in kind to stains on a crowbar found hidden in weeds at some distance from the building with the missing goods and a wire-cutting tool. Taken together all of the evidence, though circumstantial, was sufficient to allow the jury to find that a breaking had occurred. Similarly, there was ample circumstantial evidence tending to show that appellant entered the building. This evidence included expert testimony that the section of hose discovered by arresting officers on appellant's person had been cut from a similar section of hose found in the building during investigation of the "breaking." Other evidence of entry consisted of testimony that certain goods which had previously been inside the building were found outside, hidden at some distance from it—a situation which could only have been brought about by entry into the building. And where the evidence raises a question of fact for the jury and is sufficient to sustain conviction, refusal of the affirmative charge does not constitute error. Young v. State, 283 Ala. 676, 220 So.2d 843; Sidney v. State, 265 Ala. 136, 89 So. 2d 745.

Finally, appellant calls into question certain remarks of the district attorney in his final argument to the jury. Appellant maintains that these remarks were comments on his failure to testify, which entitle him to a new trial under Tit. 15, § 305, Code of Alabama, 1940, as recompiled 1958. The statute provides:

"§ 305. The defendant in criminal cases a competent witness for himself.— On the trial of all indictments, complaints, or other criminal proceedings, the person on trial shall, at his own request, but not otherwise, be a competent witness; and his failure to make such a request shall not create any presumption against him, nor be the subject of comment by counsel. If the solicitor or other prosecuting attorney makes any comment concerning the defendant's failure to testify, a new trial must be granted on motion filed within thirty days from entry of the judgment."

Appellant alludes to the following remarks shown by the record:

"They haven't proved anything. Mr. Lindsey was very careful to bring it out, and since he commented on it, I think I am entitled to say a little about it. He has, very skillfull [sic], of course, as they always do, try [sic] to make you believe that the jury is taking this man away from a very fine family and send him away for ten years and they bring somebody in here before you to appeal for sympathy and mercy, like they always do. They haven't proved to you that this defendant has a family . . . ."

[Appellant's objection sustained, motion for a mistrial overruled, and jury instructed by the court to disregard the remark.]

. . . . . .

"No, you don't have much before you; you only have our side. You only have the facts as they happened, and these facts have not been explained away.

. . . . . .

"Because what they said, under the law, has not been contradicted. The defense has not, by any evidence, contradicted what was told.

. . . . . .

"Has it been answered what they were doing?"

The general rule is that statements by the prosecutor to the effect that the State's evidence is undenied or uncontroverted are merely indirect references to the defendant's failure to testify and thus do not violate the statute. Swain v. State, 275 Ala. 508, 156 So.2d 368, affirmed on other grounds 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759; Welch v. State, 263 Ala. 57, 81 So.2d 901; Gore v. State, 45 Ala. App. 131, 226 So.2d 674. Under this rule the following remarks by prosecuting attorneys have been held permissible notwithstanding the statute: "Gentlemen, do you think we have proved those three elements? I submit to you that it is not denied, there is not a word come from this stand that denied the charge of rape." *Swain,* supra. "Mr. Smith criticizes our witness in this case, but Mr. Smith has not given us any witness to criticize." Broadway v. State, 257 Ala. 414, 60 So.2d 701. "The testimony of the State is uncontradicted and no one has denied it." *Gore,* supra. "The fact that Mr. Johnson had been robbed was not contradicted." White v. State, 44 Ala.App. 312, 208 So.2d 222. "The testimony of the state is undisputed. No testimony was presented from the witness stand to contradict any testimony of the State." Williams v. State, 43 Ala.App. 343, 190 So.2d 556. The trial court may allow remarks of this tenor so long as the defendant is not the only witness capable of contradicting the State's proof. If the prosecutor's remarks can be interpreted as referring to the failure of the defense to produce as witnesses existing persons other than the defendant who should be in a position to testify in his favor, and who are known to him, then the general rule stated above applies and there is no violation of the statute. See Street v. State, 266 Ala. 289, 96 So.2d 686; *Broadway,* supra; *Gore,* supra; Padgett v. State, 45 Ala.App. 56, 223 So.2d 597; *Williams,* supra; Littlefield v. State, 36 Ala.App. 507, 63 So.2d 565; cf. King v. State, 45 Ala.App. 348, 230 So.2d 538. The district attorney's remarks in the instant case can clearly and logically be understood to refer to the appellant's failure to produce testimony from either of the two individuals in whose company he was arrested on the night of May 20, 1964. Thus under the authorities cited appellant is not entitled to a new trial by virtue of Tit. 15, § 305, Code, supra.

We have examined the record thoroughly and we find no error therein. The judgment appealed from is due to be and the same is hereby

Affirmed.

All the Judges concur.