298 So.2d 633

Byron Ray MILLER alias Bryon Miller alias Ray Miller

v.

STATE.

4 Div. 287.

Court of Criminal Appeals of Alabama.

June 4, 1974.

Rehearing Denied June 25, 1974.

214

J. Allen Cook, Andalusia, for appellant.

William J. Baxley, Atty. Gen., and Leon Ashford, Asst. Atty. Gen., for the State.

HARALSON, Supernumerary Circuit Judge.

Appellant appeals from a conviction in the Circuit Court of Covington County of selling marijuana as charged in count number two of the indictment returned by the grand jury. His punishment was fixed by the court as three years imprisonment in the penitentiary.

When the testimony for the State was closed, the appellant made a motion to exclude, and later after the verdict was in, he filed a motion for a new trial, both of which motions were overruled by the court.

He further requested, in writing, charges numbers 1 and 2, which were also refused by the trial court. Charge number 1 was affirmitive in nature.

The refusal of the charge, above referred to, along with the overruling of the motions by the court raised the question on this appeal of the sufficiency of the evidence to support the verdict of the jury.

A statement of the substance of the testimony offered by the State is as follows:

On the night in August, 1972, State witnesses, John Harrell and John Ellis, both of whom were deputy sheriffs of Covington County, were in the sheriff's office when Susan Crenshaw came in and informed them that she was fixing to buy some marijuana and asked the deputies if they wanted to witness it. They informed her that they did. According to witness Harrell she told them that she would be in front of the courthouse at a certain time, but before this time arrived she came back and told them that there were too many people in front of the courthouse and changed the place to the high school stadium where a football game was to be played that night. She further advised the deputies that she could buy one lid, or $10.00 worth of marijuana, and was advised by

Harrell that in order to make a controlled buy she would have to be searched to be sure she did not have more money on her person. They gave her a ten dollar bill, which they had marked with a ball point pen for identification, which was to be used to make the buy. The two deputies went to the stadium beforehand and parked their car. At approximately 8:30, Susan Crenshaw arrived where she said she would be, and in a few minutes appellant and one Pete Dewrell drove up in a truck beside her car. The deputies were sitting where they could observe the meeting and saw Susan Crenshaw and Ray Miller having a conversation, after which he and Pete Dewrell left and were gone approximately 10 or 15 minutes before coming back. At this juncture appellant got out of the truck and into the car with Susan Crenshaw and the deputies observed something passed by hand between the two. Appellant next got out of the car, back into the truck, and started to drive off when the deputies pulled up and stopped him. Deputy Harrell arrested the appellant, searched him, and found the marked ten dollar bill on his person in his billfold. Susan Crenshaw's car was then searched and a package of some substance was found, later identified by a state toxicologist as marijuana. Harrell further testified that he had his wife search Susan Crenshaw before giving her the marked ten dollar bill later found on the person of appellant, when he was searched, which bill was identified by deputy Harrell.

Appellant was arrested at the scene but no statement was made by him nor was he advised of his rights at this time. The above transaction took place, according to the testimony of witnesses Harrell and Ellis, within their sight and the ten dollar bill was later identified by Harrell at the trial when it was offered into evidence, along with the serial number which had been copied down by Harrell when the bill was marked.

The witnesses, Harrell and Ellis, testified that Ellis had possession of the sub-

stance taken from the Crenshaw car and that it was taken by Ellis to the sheriff's office where it was kept overnight under lock and key and that on the following morning Ellis, who had the key overnight, unlocked the cabinet where it was stored and took it to the State toxicologist, Richard Dale Carter, at Enterprise for an examination to determine its identity by technical examination.

Deputy Ellis testified substantially as did Deputy Harrell leading up to the arrest of appellant and the obtaining of the marked ten dollar bill and the package from the automobile of Susan Crenshaw. He further testified that the package was kept under lock and key, the key being in his possession, until he personally took it to Enterprise to the toxicologist for examination. He returned the material to the sheriff's office after it was examined and returned back to him by the State toxicologist.

Richard Dale Carter, testifying for the State, stating that he was a criminologist employed by the State Department of Toxicology and Criminal Investigation and that it was part of his job to analyze and examine evidence involving crimes brought to him by police officers; that he was acting head of the crime laboratory in Enterprise. He further testified to his familiarity with the substance generally known in laymen's terms as marijuana and that he was familiar with the technical test to determine and discover this particular vegetable plant. He further testified that Deputy Ellis brought him a container having a substance in it, a brown tobacco pouch containing a small plastic bag, holding green plant material and identified the plastic bag and tobacco pouch in question, and further testifying that his initials were on these articles where he had placed them along with some writing. Upon chemical examination his testimony was that he found the substance delivered to him by Deputy Ellis to contain portions of cannabis sativa L, commonly known as marijuana. Much testimony as to the detailed examination and chemical and physical make-up of the marijuana plant was also given by this witness which is not necessary to repeat here. The weight of the substance in question was found by him to be 12.42 grams which is a little more than ½ an ounce. He received the material, above referred to, on Tuesday, August 21, at 8:20 a. m. and returned it to deputy Ellis at 10:45 a. m. on that same date, and that during the interim when he was making his examination that the material was in his laboratory and that if he left the room at all, which he did not remember clearly, it was for a short duration but that he could say that the evidence was under his control at all times and that it is normal operating procedure to keep any substance being examined under lock and key if he left the room. However, as above stated, he did not remember leaving the room at this particular examination but said that if he did that the substance would be locked in a desk to which no other person had a key.

Arell Berry, a policeman for the City of Andalusia, who was serving in that capacity at the time of the transaction in this case, testified that he was the one who made the search of Susan Crenshaw's car and found State exhibit 3, a leather pouch, and State exhibit 4, a plastic bag, which was immediately turned over to Deputy Ellis at the scene of the search. He further testified to a statement that he heard Susan Crenshaw expressing fear of being killed and that he saw Michael Holmes, her present husband, get a pistol out of the trunk of the car, put in inside the car and drive away. On cross-examination he testified that he was some distance from the car being driven by Holmes and that the witness Susan Crenshaw (Holmes) was not present at the time.

State witness Susan Crenshaw (Holmes) next testified that her maiden name had been Crenshaw and recalled the occurrence testified to by the two deputies and that she was there on her own volition and advised them that she was going to make a

buy from the appellant. She testified substantially to the facts as set out in the testimony of State's witnesses Harrell and Ellis with regard to the transaction in question and further that she volunteered for a search of her person by Deputy Harrell's wife before she received the marked ten dollar bill; that she was offered no reward nor promised any help of any kind by the officers. With regard to the transaction with the appellant, that she told him that she had $10 and wanted to buy some marijuana and he said that he did not have it on him but that he would have to go get it; that he was gone 15 or 20 minutes before coming back. At that time he came over to her car and wanted her to go off with him but she refused. He took the marijuana and put it in a pouch of hers and under the dash on the passenger side of her car and she handed him the ten dollar bill which had been given her by the deputy and was marked; that she had seen the marking on the bill before she handed it to Miller. She identified the bill when it was introduced as State's exhibit 1. After the exchange of the marijuana for the money, the appellant started to get back into his truck when deputies Harrell and Ellis arrested him. She did not know whether he was searched there or when they got him back at the jail. She went back to the Sheriff's office with officer Arell Berry. She had first seen the appellant at the Zippy Mart and was of the opinion that she had asked him to sell her some marijuana but she was not sure and that she told him that she had some money at home and had to go get it. She testified he made the statement to her that he didn't have any marijuana on him but she didn't think he knew how much she wanted to get from him. She went from the Zippy Mart to the sheriff's office after planning to meet appellant on the square. It was either a Friday or Saturday evening and there was a football game at the stadium. She later met the appellant on the square but there were a lot of cars parked there and she suggested that she meet him at the high school stadium, where she did meet him under the circumstances as related by State witnesses Harrell and Ellis. At the meeting at the stadium she told him that she had ten dollars and wanted some grass. He said he didn't have it on him and that he would have to go get it. He got back into his truck and she kept the ten dollar bill until he came back and she made the buy; and that he was about to get back into the truck when Deputy Harrell drove up, by prearrangement, and appellant was arrested and searched as heretofore related by the other witnesses, or back at the jail. She testified that she had known the appellant for some time, having been in the same class in school, and that the idea of buying the marijuana was her idea; that she had dated Miller several times; and that she did not receive any reward in money for her part in this transaction.

Susan Crenshaw, on recross-examination, testified that her father worked at the jail in Covington County as a jailer or some sort of employee and that the quantity of marijuana involved in the case was ½ a lid and to other details about the jargon used by persons familiar with marijuana.

Appellant did not testify but called several character witnesses who testified to his good character in his community.

Appellant strenuously insists that his arrest was without legal sanction and that the search by the officers, which produced the marked ten dollar bill, was also made without authority of law and violated his constitutional rights and therefore, its admissibility into evidence error on the part of the court. The circumstances under which the officers may make an arrest without a warrant are set out in Title 15, Section 154, Code of Alabama 1940, Recompiled 1958, which provides in part:

"Arrest by officer without warrant; when and for what allowed.—An officer may also arrest any person, without warrant, on any day and at any time, . . .

when a felony has been committed, and he has reasonable cause to believe that the person arrested committed it . . . ." Sellers v. State, 48 Ala.App. 178, 263 So.2d 156.

This court has quoted with approval the meaning of the term "reasonable cause" as set out in the above section, from the case of Union Indemnity Co. v. Webster, 218 Ala. 468, 118 So. 794, in which the court said: "It is defined to be a state of facts or circumstances as would lead a reasonable man of ordinary caution, acting impartially, reasonably, and without prejudice to conscientiously believe the person accused to be guilty."

To like effect is the holding in several other cases including Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543; Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441; Maples v. State, 44 Ala.App. 491, 214 So.2d 700.

To quote from Maples v. State, 44 Ala. App. 491, 214 So.2d 700,

"Reasonable grounds for suspicion when accompanied by facts or circumstances strong enough to justify a reasonably cautious man to believe the guilt of the suspect, suffice to constitute probable cause necessary for arrest without warrant."

We believe that under the circumstances, uncontradicted in the evidence, the officers had the right to arrest the appellant on the occasion complained of without the necessity of a warrant. Loper v. State, 44 Ala.App. 204, 205 So.2d 521, along with other authority such as *Sellers, supra*; Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327, holds that the fruits of a search of a person are admissible if the search that produced them was incident to a lawful arrest, if properly identified and they tend to shed some light on the commission of the crime or particularly the way the crime was committed. Flannagin v. State, 48 Ala.App. 559, 266 So.2d 637, affirmed 289 Ala. 177, 266 So.2d 643.

The appellant further argues that the actions of the officers and State witness Susan Crenshaw Holmes amounts to entrapment and, therefore, the verdict of guilty should not be allowed to stand.

In Johnson v. State, 36 Ala.App. 634, 61 So.2d 867, this court speaking through Judge Carr, Presiding Judge, with regard to the defense of entrapment said, "Hence a distinction has been drawn between the inducing of an innocent person to do an unlawful act, and the setting of a trap to catch one in the execution of a criminal plan of his own conception, an act of the latter character by an officer not being regarded as against public policy, and entrapment is not available as a defense to a person who has the intent and design to commit a criminal offense and who in fact does commit the essential acts constituting it, merely because an officer of the law, in his effort to secure evidence against such person, affords him an opportunity to commit the criminal act, or purposely places facilities in his way or aids and encourages him in the perpetration thereof.

"An officer may, when acting in good faith with a view to detecting crime, make use of deception, trickery, or artifice; and so it is not a defense that decoys were used to present an opportunity for the commission of the crime or that detectives or others feigning complicity in the act were present and apparently assisting in its commission. Especially is this true in that class of cases where the offense is one of a kind habitually committed, and the solicitation merely furnishes evidence of a course of conduct."

Of particular importance on the question of inducement of appellant to commit the crime is Lindsay v. State, 41 Ala.App. 85, 125 So.2d 716; Garsed v. State, 50 Ala. App. 312, 278 So.2d 761.

Other cases from this jurisdiction where the criminal sale of unlawful commodities such as liquors, narcotics, etc., were made at the solicitation and request of officers whose identity was disguised are Webb v.

State, 42 Ala.App. 385, 166 So.2d 510; Dodd v. State, 32 Ala.App. 307, 26 So.2d 273; Nelson v. City of Roanoke, 24 Ala. App. 277, 135 So. 312. These cases hold that where the appellant is disposed to commit the crime and the officers merely provide the opportunity by request or encouragement to commit the criminal act, there is no entrapment. See Alabama Digest, Criminal Law, Volume 6, ☞37.

It appears to the court that even though the suggestion to commit the crime was first made by State witness Susan Crenshaw, we think it was a question for the jury to decide whether appellant was predisposed to the commission of the crime. He was first solicited by her to buy marijuana at the Zippy Mart and agreed to meet her on the Courthouse Square which he did. The conditions being unfavorable there for the transaction, he next agreed to meet her at the high school stadium which he did and not having the marijuana on his person and not knowing how much she desired to buy, he then left and procured at least the amount she wanted, came back and sold it to her.

 Under the circumstances we see no room for the operation of the defense of entrapment in the instant case.

We are further of the opinion that there was no error on the part of the court in overruling the motion to exclude the evidence and the motion for a new trial nor in refusing the affirmative charge (number 1).

Refused charge number 2, if not otherwise faulty, which we do not decide, was properly refused because the principle sought to be set out was fully covered by the oral charge of the court.

We have carefully considered the objections made to argument of counsel to the jury and find no error in the rulings of the court thereon injurious to the substantial rights of appellant. To set out this argument in extenso in our opinion would only incumber the record needlessly. The case is due to be affirmed.

The foregoing opinion was prepared by Honorable W. J. Haralson, Supernumerary Circuit Judge, serving as a Judge of this Court under Section 2 of Act No. 288, Acts of Alabama, July 7, 1945, as amended; his opinion is hereby adopted as that of the Court.

The judgment below is hereby

Affirmed.

All the Judges concur.