LEIGH M. CLARK, Supernumerary Circuit Judge.
This appeal is from a judgment of conviction of murder in the first degree and a sentence to imprisonment for life. The alleged victim was Herbert Harding Duvall of Childersburg, the operator of a store in that city.
According to the evidence for the prosecution, the victim left his home about 7:45 A.M. on Friday, March 29, 1974. He had a billfold full of money, according to his wife. Mrs. Duvall went to the store about 10:50 the same morning. She left in about twenty minutes. While there she noticed a boy wearing an unusual kind of a hat, one “without much of a brim and with little button like things scattered around on it”; he had a goatee. Mrs. Duvall identified him as John Henry Lee. While at the store, Mrs. Duvall talked with her husband and telephoned her daughter; it was understood that her daughter would come to work at the store for a while about 12:00 noon. Mrs. Vincent, the daughter, arrived at the store at about 11:2S; she noted scattered merchandise including shoes and shoe boxes and started picking them up. A boy came in to pay on someone else s bill. Mrs. Vincent went to the cash register, noticed it was open and that all the currency was gone, though coins were still in the register. She became concerned and went to the back of the store looking for her father. She found him in the' bathroom but didn’t go in because he had his trousers down. She went to the phone and called her mother but did not get her. She called the police department; she then called her mother again and told her to come to the store. Soon thereafter, Officer Shell and Mrs. Duvall arrived at the store. According to the testimony of the three, Mr. Duvall had been injured. He had a cut on the right side of his head, at his ear, and his temple had some blood on it. He was “addled.” He fought with Officer Shell and attempted to escort Officer Shell out of the front of the store. Mr. Duvall’s spectacles were found in some shoes on the “left side behind” Mr. Du-vall’s “desk.” A battery, a part of Mr. Du-vall’s hearing aid, was found about twelve feet from the front of his desk. There was a claw hammer, which belonged to Mr. Duvall, out of its customary place and lying on the floor behind Mr. Duvall’s desk. Mr. Duvall was taken by ambulance to a hospital about ten minutes before twelve o’clock. His physicians found that he had a fractured skull, and an injury to his brain, from which he never recovered. Surgery was performed, and the physicians removed a blood clot and a necrotic portion of the brain. He contracted pneumonia and died on August 29, 1974. He had been hospitalized or in a nursing home continuously from the date of his injury to the date of his death, having been in four hospitals and one nursing home. At one time he was in intensive care for approximately three weeks. In answer to a question as to what caused his death, a physician answered: “Well, his cause of death was directly due to the pneumonia. The fact that he had sustained major head trauma and was bed-confined from that, results in an increase incidents of pulmonary problems.” *180 Upon being questioned whether the injury to the head was the “approximate” cause of bringing on the bilateral pneumonia of which he died, his answer was, “Yes sir.” According to the doctor, Mr. Duvall never spoke coherently. He was seventy-seven years of age. The physician who first examined Mr. Duvall in emergency said: “My first impression when I saw it (referring to the injury to his head), but before anybody said anything about what it was, or anything, the injury had the appearance of an imprint about the size of a hammer.”
William Pope, a witness for the State, said that on the morning of March 29, he, John Henry Lee and defendant went in defendant’s Ford automobile to several places, including Talladega, that after they returned toward Childersburg, he heard Shelley and John Henry “talking about that they needed to rob somebody or hit somebody for some money or something.” They did not name any place at that time. Thereafter “Shelley Woods kept on talking about it and I said, ‘Well, I have been in trouble one time and I’m not getting in no more trouble’ ... so Shelley just kept on talking about Mr. Duvall and A & P kept a right smart of money and that we needed to hit one of them.” The witness said he again stated to the other two that he wasn’t getting in any more trouble and thereafter Shelley said that he was just teasing. They returned to the business part of Childersburg, where Mr. Duvall’s store was located. He stayed in the car, which John Henry and defendant left. While he was there he looked toward Mr. Duvall’s store and saw Shelley Woods come out of the store. Woods came “down the street back towards J & J and cut through the alley.” Thereafter John Henry joined the witness, getting in the front seat and Woods came to the car “out of this alley.”
Robert Green, the owner of Campbell Auto Parts in Childersburg located a hundred and seventy-two feet from Mr. Du-vall’s store, testified that Woods and about four or five other black boys came into his store between eleven and eleven thirty A. M. March 29. He said Woods wanted to buy some Ford brake shoes, but he told Woods he didn’t have them.
After Officer Shell and the victim’s wife and daughter arrived at the store, and after Officer Shell had enlisted the aid of other officers and members of the Child-ersburg Fire Department, a diligent search was made in the store and in the vicinity outside the store for Mr. Duvall’s billfold or pocketbook, and it was never found. There was about a hundred dollars in Mr. Duvall’s shirt pocket.
About 4:00 P.M. March 29, defendant was arrested. He made a statement in which he said that on March 29 he was not in the vicinity of that part of the business section of Childersburg where Mr. Duvall’s store was located. He made another statement about an hour thereafter, in which he admitted that he was close to Mr. Duvall’s store, that he went into a liquor store there located to pick up a pint of gin. He said he did not take his automobile, but walked.
Several witnesses testified for defendant as to an alibi at about ten, eleven and twelve o’clock on the morning of March 29. Their testimony was far from conclusive.
Defendant testified and positively denied that he was in Mr. Duvall’s store on March 29. He said he was at the liquor store close to Duvall’s store between 9:30 and 10:00. He denied that he had been with William Pope and John Henry Lee on March 29. He said he had been with them on March 28. He said he went into Campbell’s Auto Parts on March 28 and asked Mr. Green for Ford brake shoes but that he did not go in the store on March 29.
Only a fractional part of the evidence is narrated above, but it is sufficient to show that a jury issue as to defendant’s *181 guilt of murder in the first degree was presented. Circumstantial though it is, there is substantial evidence that Mr. Du-vall was hit on the head “with a hammer or some other blunt object” as charged in the indictment; that a felonious attack was made upon him in an effort to rob him; that defendant was a participant in the attack upon Mr. Duvall. The evidence is also sufficient to furnish a basis for the finding that Mr. Duvall’s death was proximately caused by the blow to his head. To accept defendant’s testimony would require us to disregard the testimony of one witness that defendant planned to rob Mr. Duvall and the testimony of another witness that defendant was seen leaving Mr. Duvall’s store about the time Mr. Duvall was injured. A homicide committed in the perpetration of, or the attempt to perpetrate, robbery, constitutes murder in the first degree. Code of Alabama, Title 14, Section 314. For us to hold that the injury received by Mr. Duvall was not the cause of his death would require us to ignore circumstances sufficient to show a causal connection between the injury and death and to reject the opinion of at least one physician.
Appellant also urges that defendant was denied his right to a speedy trial. He relies largely upon Barker v. Wingo, 407 U.S. 514, 530, 92 S.Ct. 2182, 33 L.Ed.2d 101, 117 (1972), in which it was held that four related factors must be considered together in determining whether an accused has been deprived of his right to a speedy trial, which are:
“(l)[L]ength of the delay, (2) the reason for the delay, (3) the defendant’s assertion of his right, and (4) prejudice to the defendant.”
Defendant did assert his right to a speedy trial. On February 13, 1975, after noting that his case was not scheduled for trial the week beginning February 17, 1975, he filed a motion for a speedy trial. On March 7, 1975, after noting that his case was not set for the week beginning March 24, 1975, he filed another motion for a speedy trial. In that motion he also alleged that his bond was excessive. The indictment for murder was returned on January 10, 1975. The indictment for assault with intent to murder was nolle prossed on motion of the State on January 15, 1975. It seems that there was never any hearing on either of defendant’s motions for a speedy trial. It seems also that defendant never requested any hearing on either of such motions. The record indicates that no hearing was ever held as to the matter of a speedy trial until after trial and conviction of defendant on May 14, 1975, which hearing was in connection with defendant’s motion for a new trial. Most of the contentions of the parties at the hearing on the motion for new trial were based upon stipulations of the parties as to what had occurred as to the docket in the Tal-ladega Circuit Court, between the time defendant was indicted for murder and the time of his trial. In addition, there were some comments by attorneys and some testimony of the clerk of the court and the sheriff. In essence, it seems that one of the two circuit judges of the Talladega Circuit Court had indicated a recusal by him in this particular case, and that the services of the other judge, the judge who tried this case, were well absorbed between the time of the indictment and the time of trial by other pressing cases. When this case was called for trial on May 12, 1975, both parties promptly announced ready.
In charging that there was a delay of thirteen months, appellant includes the time that defendant was charged with assault with intent to murder. The time he was under indictment for murder was approximately four months. That there was good reason for the delay in bringing the charge of assault with intent to murder to trial seems unquestioned and unquestionable. Mr. Duvall was not physically able to attend trial after the date of the alleged crime. Even so, it seems that there was some hope of a recovery and apparently *182 some belief on the part of Mr. Duvall that he would get well, for on the trial of this case the State was prevented from showing a statement by Mr. Duvall connecting defendant with his trouble on the theory that it was a dying declaration, by reason of evidence indicating that he expected to live. The necessary delay in bringing the case to trial on the charge of assault with intent to murder is not chargeable against the State in connection with the indictment for murder. Even if it were, the answer is as stated in Barker v. Wingo, supra, 407 U.S. at 531, 92 S.Ct. at 2192:
“Finally, a valid reason, such as a missing witness, should serve to justify appropriate delay.”
Appellant argues that he was prejudiced by the delay in that he was caused thereby to be deprived of the benefit of the testimony of Mr. Duvall. The answer is at least two-fold: (1) delay or not, Mr. Du-vall could never have testified, and (2) it cannot be assumed that Mr. Duvall’s testimony would have been favorable to defendant.
Our review of the record convinces us: (1) the length of the delay was not inordinate, (2) there was reasonable cause for the delay, (3) defendant asserted his right to a speedy trial but did not press it until after he was convicted, and (4) no prejudice resulted to defendant by reason of the delay. Defendant was not deprived of a constitutional right to a speedy trial. Barker v. Wingo, supra; Moss v. State, 50 Ala.App. 643, 282 So.2d 82; Sellers v. State, 48 Ala.App. 178, 263 So.2d 156.
We have considered all questions raised by appellant. In addition, we have searched the record for error prejudicial to appellant and have found none. The judgment appealed from should be affirmed.
The foregoing opinion was prepared by Supernumerary Circuit Judge Leigh M. Clark, serving as a judge of this Court under Section 2 of Act No. 288 of July 7, 1945 as amended; his opinion is hereby adopted as that of the Court. The judgment below is hereby
AFFIRMED.
All the Judges concur.