The appellant was indicted by a Mobile County grand jury for burglary in the first degree in violation of § 13A-7-5, Code ofAlabama (1975). The appellant was found guilty in a jury trial of the lesser included offense of burglary in the second degree and was sentenced pursuant to the Habitual Felony Offender Act to life imprisonment.
On the night in question, Lee Christian Moody and his fiancee (now his wife), Sherry Brown Moody, were at the home of Mr. Moody when he noticed a late model Pontiac Firebird automobile, "burnt orange" in color, pull up in front of his house. The driver exited the Firebird, approached Moody's home and began to beat on the front door. Moody's house was located several thousand feet from the road, and because of the isolated locale, Moody did not answer the door at night if a visitor had not called first to tell Moody that he was coming by. As Moody was not expecting company at this time, he did not answer the door or otherwise make his presence known. The visitor then left the premises.
About an hour and a half later, Moody's fiancee told him that the Firebird was once again driving up the driveway. Looking outside, Moody saw that the Firebird had stopped in his circular driveway with its lights on and its motor running. Again, the driver left the car and began beating on the front door for about five minutes, and then began jumping up and down in front of a window. When this got no response, the man walked to the back of Moody's house, trying the door locks and beating on the panes of the back doors and windows. The man then returned to the Firebird, backed the car up to Moody's house and opened the trunk. At this point, Mr. Moody called the police to report a burglary in process.
While Moody continued to monitor the actions of the prowler, his fiancee remained on the phone with the police, telling them what was occurring. When the prowler gained entry to the home, Moody heard him say, "Man, this is it," and heard him coming up the stairs. Moody, who had armed himself with a 12-gauge shotgun, then confronted the burglar, telling him to raise his hands and stay where he could see him. Thereafter, Moody ordered the man to slowly back out of the house and to leave. The man got into the Firebird and quickly drove away with his trunk still open.
Corporal Bruce Yunker of the Mobile Police Department received a radio dispatch that a burglary was in progress at Moody's address. As Yunker was proceeding toward Moody's home, he received two more dispatches, the first advising him that the burglar had gained entry into the home, and the second telling him that the burglar was fleeing from the home in a reddish-colored Firebird with an open trunk. Shortly thereafter, Corporal Yunker saw the Firebird, with its trunk open, coming toward him at high rate of speed. Yunker stopped the car. As the officers approached the Firebird, the driver ducked down, as if to place something on or beside the seat of the car. The officers removed the driver from the car, holding him at gunpoint, and then searched the vehicle. The officers found a loaded sawed-off rifle on the floorboard and immediately handcuffed the man and took him into custody. The two officers then did an inventory search of the vehicle, finding a .25 caliber automatic pistol with a cocked hammer by the gear shift lever, and a ski mask, black gloves, ammunition, and other items in the trunk. Yunker testified that, when he arrested the driver, he gave him his Miranda rights, and commented that he was lucky that Moody had not shot him. Yunker further testified that the suspect then responded that "when I looked at him, I knew he didn't have the guts to shoot me." Moody arrived on the scene a short time later and identified the appellant as the man who broke into his house.
 I.
The appellant contends that Corporal Yunker did not have probable cause to stop him and search his car. He therefore argues that objects seized during the search were erroneously admitted into evidence at this trial. *Page 329 
Section 15-10-3(a)(3), Code of Alabama (1975), provides for the warrantless arrest of a person when a felony has been committed and the officer has reasonable cause to believe that the person arrested committed the felony. "Reasonable cause" is defined as a state of facts or circumstances such as would lead a reasonable man of ordinary caution, acting impartially, reasonably, and without prejudice, to conscientiously believe the person accused to be guilty. Miller v. State, 53 Ala. App. 213, 298 So.2d 633 (Ala.Cr.App.), cert. denied, 292 Ala. 741,298 So.2d 639 (1974). If a warrantless arrest is based on probable cause, and is thus lawful, any evidence seized incident to that arrest can be admitted into evidence. State v.Calhoun, 502 So.2d 795 (Ala.Cr.App.), aff'd in part, rev'd on other grounds, 502 So.2d 808 (Ala. 1986).
In the present case, the appellant's automobile matched the description given in the radio dispatch of the burglar's car and was travelling at a high rate of speed down the only road leading out of the subdivision in which Moody's house was located. As the warrantless arrest of the appellant was legal, evidence obtained as a result of that arrest was properly admitted into evidence. Calhoun, supra.
 II.
The appellant argues that the trial court erred in denying his motion for judgment of acquittal.
In Robinette v. State, 531 So.2d 697 (Ala. 1988), our Supreme Court held the following:
 "The standard for appellate review of the sufficiency of the evidence in a case such as this one was aptly set out in Dolvin v. State, 391 So.2d 133 (Ala. 1980):
 " ' "In reviewing a conviction based on circumstantial evidence, this court must view that evidence in the light most favorable to the prosecution. The test to be applied is whether the jury might reasonably find that the evidence excluded every reasonable hypothesis except that of guilt; not whether such evidence excludes every reasonable hypothesis but guilt, but whether a jury might reasonably so conclude. United States v. Black, 497 F.2d 1039 (5th Cir. 1974); United States v. McGlamory, 441 F.2d 130
(5th Cir. 1971); Clark v. United States, 293 F.2d 445 (5th Cir. 1961).
 " ' "[W]e must keep in mind that the test to be applied is not simply whether in the opinion of the trial judge or the appellate court the evidence fails to exclude every reasonable hypothesis but that of guilt; but rather whether the jury might so conclude. Harper v. United States, 405 F.2d 185 (5th Cir. 1969); Roberts v. United States, 416 F.2d 1216 (5th Cir. 1969). The procedure for appellate review of the sufficiency of the evidence has been aptly set out in Odom v. United States, 377 F.2d 853, 855 (5th Cir. 1967):
 " ' " 'Our obligation, therefore, is to examine the record to determine whether there is any theory of the evidence from which the jury might have excluded every hypothesis except guilty beyond a reasonable doubt. Rua v. United States, 5 Cir. 1963, 321 F.2d 140; Riggs v. United States, 5 Cir. 1960, 280 F.2d 949. . . . The sanctity of the jury function demands that this court never substitute its decision for that of the jury. Our obligation is to examine the welter of evidence to determine if there exists any reasonable theory from which the jury might have concluded that the defendant was guilty of the crime charged. McGlamory, 441 F.2d at 135 and 136.' " ' (Emphasis in original.)
 391 So.2d at 137-38, quoting Cumbo v. State, 368 So.2d 871, 874 (Ala.Crim.App. 1978), cert. denied, Ex parte Cumbo, 368 So.2d 877 (Ala. 1979)."
Id. at 698-99.
Section 13A-7-6(b), Code of Alabama (1975), provides as follows:
 "(b) In the alternative to subsection (a) of this section, a person commits the crime of burglary in the second degree if he unlawfully enters a lawfully occupied dwelling house with intent to commit a theft or felony therein." *Page 330 
The evidence presented by the State in the present case establishes that the appellant "cased" the home to determine that nobody was present, and then effected an illegal entry into the home, which was, in fact occupied by Moody and his fiancee. The appellant contends that the State offered no evidence to show that he entered Moody's residence with the intent to commit theft. The appellant contends that he entered the house under the mistaken belief that it belonged to a friend of his. This argument, however, is refuted by the covert and illegal means by which the appellant entered the dwelling, his conduct once inside, and by the fact that the motor of his car was running and its trunk opened when he entered the residence. The prosecution established a prima facie case of burglary in the second degree, and the trial court did not err in denying the appellant's motion.
 III.
Finally, the appellant contends that the trial court erred at his sentencing hearing by not considering as one conviction for the purpose of sentence enhancement, several offenses committed by him during a single occurrence or event. The appellant therefore argues that the trial court improperly sentenced him to life imprisonment under the Habitual Felony Offender Act.
The pertinent portions of this record are confusing. However, it appears that, on April 30, 1980, the appellant committed six armed robberies in the State of Louisiana.[1] It further appears that, pursuant to a plea bargain agreement, on October 27, 1980, the appellant, while being represented by the same attorney, entered separate guilty pleas in cases 80-1505, 80-1506, and 801321, and was sentenced to concurrent sentences of ten years in each case. Each of these cases involved different victims, and they appear to have been treated by the court as separate offenses, as evidenced by the following notation at the bottom of the certified judgment entry in case 80-1506:
 "Sentence imposed without benefits of probation, parile [sic] or suspension of sentence. This sentence is to run concurrently with case No.'s 80-1321 and 801505 of the Twenty-fourth Judicial District Court. All as provided in compliance with Article 894.1." (Emphasis supplied)
As the State notes in its brief, this issue was decided adversely to the appellant in Seritt v. State, 401 So.2d 248,250-51 (Ala.Cr.App. 1981), cert. denied, Ex parte Seritt,401 So.2d 251 (Ala. 1981). In Seritt, this Court held that the trial court did not err in refusing to consider several offenses arising out of a common event or occurrence as one offense for the purposes of sentence enhancement under the Habitual Felony Offender Act.
The appellant also argues that the robberies cannot be treated as separate convictions by an Alabama court, since, under Louisiana law, they would be treated as a single conviction. However, this issue has also been previously decided adversely to the appellant. See, Pearson v. State,455 So.2d 963, 966 (Ala.Cr.App. 1984) (wherein we held that the appellant's five Illinois convictions were properly treated as five separate convictions under Alabama law, even though they would be treated as one conviction under Illinois law). The appellant's argument as to this issue must therefore also fail.
AFFIRMED.
All Judges concur.
[1] The record at (page 261) indicates that at least some of the robberies occurred on April 13, 1980. However, the transcript of the sentencing hearing suggests that this may be a typographical or clerical error. *Page 331